[Cite as *State v. Bradbury*, 2016-Ohio-5091.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

|                        |   |                          |
|------------------------|---|--------------------------|
| STATE OF OHIO,         | : |                          |
| Plaintiff-Appellee,    | : | CASE NO.  CA2015-06-111  |
|                        | : | O P I N I O N            |
| - vs -                 |   | 7/25/2016                |
|                        | : |                          |
| DENNIS BRADBURY,       | : |                          |
| Defendant-Appellant.   | : |                          |

CRIMINAL APPEAL FROM BUTLER COUNTY AREA III COURT
Case No. CRB 1400313

Michael T. Gmoser, Butler County Prosecuting Attorney, Lina N. Alkamhawi, Government Services Center, 315 High Street, 11th Floor, Hamilton, Ohio 45011, for plaintiff-appellee

Arenstein & Gallagher, Hal R. Arenstein, 114 East Eighth Street, Cincinnati, Ohio 45202, for defendant-appellant

**PIPER, J.**

{¶ 1} Defendant-appellant, Dennis Bradbury, appeals his conviction in the Butler County Area III Court for violating an ex parte protection order.

{¶ 2} Todd and Jamie Minniear purchased property in Butler County on which a Montessori School had been in existence for approximately 36 years. The school has approximately 46 students (ages three to nine), and five teachers. Bradbury moved into the

home owned by his mother, which is situated next to the school. Soon after he moved into his mother's home, Bradbury began to have negative interactions with the Minniear family, the school teachers, as well as the children and their parents.

{¶ 3} Bradbury began taking pictures of school employees and children, coming onto school property without permission, and cutting the grass on school property. Todd eventually went to Bradbury and asked him not to have any further contact with his family, school employees, students and their parents. Todd also asked Bradbury to stay off school property. Bradbury became upset, and insisted upon knowing why he was not permitted to go onto school property. Todd explained that it was inappropriate to allow people onto school property while school was in session and teachers were working with students.

{¶ 4} Bradbury later called Todd and asked again why he was not permitted to go onto school property, and Todd agreed to meet with Bradbury to explain. During their meeting, Todd explained that it was not proper school protocol to allow people onto school property while children were engaged with their teachers. Bradbury became angry and responded, "if any of those fucking teachers said I was looking at their fucking tits, we've got a big problem." Todd contacted police about the situation, but did not seek any formal action, afraid to escalate the situation.

{¶ 5} After that meeting, Bradbury came onto school property, called Todd to argue about not being permitted on school property, and demanded that Todd move a gate that separated school property from township property. During one phone call in particular, Bradbury told Todd that if the teachers looked at his garage, truck, or dog he would go over to the fence and stare at them. After that phone call, Todd agreed to meet with Bradbury's father regarding the gate issue. Bradbury attended the meeting, and became "really angry and started to scream" at Todd. When Todd tried to leave, Bradbury stepped in front of him, and pulled his hand back as if to hit Todd. Bradbury told Todd that if he would agree to move

the gate "all of this will stop."

{¶ 6} During this time, Bradbury continued to take photographs of the school, its teachers, students, and the students' parents. Todd contacted police, who suggested that Todd seek a protection order. Todd also installed a privacy fence between the properties and installed surveillance cameras.

{¶ 7} After Todd petitioned the court for a protection order on behalf of himself and his family, a magistrate granted an ex parte protection order. An officer of the West Chester Police Department served Bradbury with the order, and a full hearing was set. Before the full hearing occurred, and four days after being served with the protection order, Bradbury came out of his house and glared at Jamie and another teacher who were supervising approximately 26 children on the playground.

{¶ 8} Jamie stayed outside with the children, as the school day was over and parents were beginning to pick up the children. She observed Bradbury on the phone, and heard him yelling at the police. After the children were gone, Jamie called Todd and the police. Todd arrived at the school, and the police confirmed that Bradbury had called them to report that Jamie had run at him and was glaring at him.

{¶ 9} Todd showed video from the surveillance cameras of the incident to the officers. In the video, Jamie is seen walking around the playground and watching the children. However, at no time did she run toward Bradbury or the fence, and at no time did she glare in his direction. Police arrested Bradbury for violating the terms of the protection order, and charged him by complaint with the violation.

{¶ 10} The issue proceeded to a two-day trial after which, the jury found Bradbury guilty. The trial court sentenced Bradbury to 180 days in jail with 150 days suspended, community control for two years, a fine, and court costs. Bradbury appeals his conviction, raising four assignments of error. Because some of the assignments are interrelated, we will

combine the first and second assignments of error together, and address the third and fourth together as well. For ease of discussion, we will also address the assignments of error out of order.

{¶ 11} Assignment of Error No. 3:

{¶ 12} THE FINDING OF GUILT WAS AGAINST THE SUFFICIENCY OF THE EVIDENCE.

{¶ 13} Assignment of Error No. 4:

{¶ 14} THE FINDING OF GUILT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 15} Bradbury argues in this third and fourth assignments of error that his conviction was against the manifest weight of the evidence and was not supported by sufficient evidence.

{¶ 16} When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Paul*, 12th Dist. Fayette No. CA2011-10-026, 2012-Ohio-3205, ¶ 9. The "relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶ 17} A manifest weight of the evidence challenge, on the other hand, examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all

- 4 -

reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Graham*, 12th Dist. Warren No. CA2008-07-095, 2009-Ohio-2814, ¶ 66.

{¶ 18}  "While appellate review includes the responsibility to consider the credibility of witnesses and weight given to the evidence, these issues are primarily matters for the trier of fact to decide."  *State v. Barnes*, 12th Dist. Brown No. CA2010-06-009, 2011-Ohio-5226, ¶ 81.  An appellate court, therefore, will overturn a conviction due to the manifest weight of the evidence only in extraordinary circumstances when the evidence presented at trial weighs heavily in favor of acquittal.  *Id.*

{¶ 19}  Although the legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different, a "determination that a conviction is supported by the manifest weight of the evidence will also be dispositive of the issue of sufficiency."  *State v. Jones*, 12th Dist. Butler No. CA2012-03-049, 2013-Ohio-150, ¶ 19.

{¶ 20}  Bradbury was convicted of violating R.C. 2919.27, which prohibits a person from recklessly violating the terms of a protection order.

> A person acts recklessly when with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature.  A person is reckless with respect to circumstances when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that such circumstances are likely to exist.

R.C. 2901.22(C).

{¶ 21}  The record indicates that Bradbury's conviction is supported by the manifest weight of the evidence and is supported by sufficient evidence.  The terms of the protection order specifically prohibited Bradbury from taking photographs of the school, or contacting

any of the teachers, parents or children at the school. The order also prohibited Bradbury from "waiving [sic], motioning or glaring" at anyone on the school's property.

{¶ 22} During the trial, the state presented testimony from the witnesses who observed Bradbury glare at them on the day of his arrest. One of the school teachers who was present on that day, testified that she, another teacher, and Jamie were outside on the playground with the children. Bradbury exited his house, walked down the stairs, leaned forward and began glaring at the school, teachers, and children. The teacher testified that to her, "a glare is a look that is unfriendly, and is intimidating. It suggests just more than just a look, kind of frightening. Kind of like a one up to say I'm bigger. And it lasts longer than appropriate." She also testified that Bradbury stood and glared at them for about 15 to 20 seconds.

{¶ 23} Jamie testified that on the day in question, Bradbury left his home, and glared at her. She testified that "he was glaring, and it was clear by his face that he was very angry and he was * * * staring right at us." Jamie also testified that she observed Bradbury and that he was "just really pissed off. So that was the scary part." She also stated that she felt Bradbury was "unpredictable," and that the incident lasted between 15-20 seconds. Jamie testified that the experience was "traumatic" for her, and that it was "intense."

{¶ 24} After viewing this testimony in a light most favorable to the prosecution, we find that the state was able to prove the charge beyond a reasonable doubt. Moreover, we do not find that the jury clearly lost its way or created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. As such, Bradbury's conviction was supported by sufficient evidence and was not rendered against the manifest weight of the evidence. Bradbury's third and fourth assignments of error are therefore, overruled.

{¶ 25} Assignment of Error No. 1:

{¶ 26} THE REPEATED REMARKS BY THE STATE'S PROSECUTOR IN HIS CLOSING ARGUMENT VIOLATING THE "GOLDEN RULE" CONSTITUTED MISCONDUCT

SUCH THAT IT PREJUDICIALLY AFFECTED SUBSTANTIAL RIGHTS OF THE APPELLANT.

{¶ 27} Assignment of Error No. 2:

{¶ 28} IT IS IMPROPER FOR THE STATE'S PROSECUTOR TO ARGUE HIS EVIDENCE IS UNCONTROVERTED BECAUSE THAT IMPLIES THE JUDGE SHOULD PENALIZE APPELLANT FOR NOT TESTIFYING.

{¶ 29} Bradbury argues in his first and second assignments of error that the prosecutor engaged in prosecutorial misconduct during the state's closing arguments.

{¶ 30} The record indicates that Bradbury did not object to the statements he claims amount to prosecutorial misconduct. As such, we will apply a plain error analysis when reviewing whether Bradbury was denied a fair trial. *State v. McCollum*, 12th Dist. Clermont No. CA2014-11-077, 2015-Ohio-3286, ¶ 11. A plain error is any error or defect "affecting substantial rights [that] may be noticed although they were not brought to the attention of the court." Crim.R. 52(B). Notice of plain error is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. *State v. Long*, 53 Ohio St.2d 91 (1978). Accordingly, an error does not rise to the level of a plain error unless, but for the error, the outcome of the trial would have been different. *McCollum* at ¶ 11.

{¶ 31} For a conviction to be reversed on the basis of prosecutorial misconduct, a defendant must prove the prosecutor's comments were improper and that they prejudicially affected the defendant's substantial rights. *State v. Elmore*, 111 Ohio St.3d 515, 2006-Ohio-6207, ¶ 62. However, the "focus of an inquiry into allegations of prosecutorial misconduct is upon the fairness of the trial, not upon culpability of the prosecutor." *State v. Gray*, 12th Dist. Butler No. CA2011-09-176, 2012-Ohio-4769, ¶ 57. As such, prosecutorial misconduct is not grounds for error unless the defendant has been denied a fair trial. *State v. McKelton*, 12th

Dist. Butler No. CA2015-02-028, 2015-Ohio-4228, ¶ 13. In order to determine whether a prosecutor's remarks were prejudicial, the prosecutor's closing argument is reviewed in its entirety. *State v. Layne*, Clermont App. No. CA2009-07-043, 2010-Ohio-2308, ¶ 58. On review, a "court will not deem a trial unfair if, in the context of the entire trial, it appears clear beyond a reasonable doubt that the jury would have found the defendant guilty even without the improper comments." *State v. Sharp*, 12th Dist. Butler No. CA2009-09-236, 2010-Ohio-3470, ¶ 97.

{¶ 32} A "Golden Rule" argument exists where the prosecutor appeals to jury members to abandon a position of impartiality by imagining themselves in the position of one of the parties. *State v. Tucker*, 12th Dist. Butler No. CA2010-10-263, 2012-Ohio-139, ¶ 44. As it relates to a criminal context, a "Golden Rule" argument could also involve "a request by the prosecutor that the jury accord a defendant the same treatment that the defendant accorded his victim." *Id.* Such arguments, while generally prohibited, are "not per se prejudicial so as to warrant a new trial." *Id.* Instead, the test is whether such an argument "prejudicially affected substantial rights of the defendant." *Id.*

{¶ 33} After reviewing the record, we do not find that any of the prosecutor's statements prejudicially affected Bradbury's substantial rights. During closing arguments, the prosecutor made the following statements, which Bradbury argues are violations of the golden rule.

> (1) Now, remember yesterday when I said all I'm going to ask you to do is follow the law. Well a protection order was obtained. There's no doubt he was served with it. There's no doubt he knew about it. And what was Mr. Minniear supposed to do? What did he do? What would you have done in his position?
>
> (2) And you saw the size of Jamie and [the teacher who testified]. Now, look at the size of [Bradbury]. Would you feel intimidated? Would you feel threatened in their situation?

- 8 -

(3) If you're a parent, and you have a child at the community Montessori school and you find out about Mr. Bradbury's behavior, do you want your child there?

(4) Did [the teacher who testified] have any reason to lie here? When she says he's taking my photo, what else did she tell you? He's glaring at us while we're trying to take care of the kids. Did she say I was looking at her for the whole 15 seconds? No. All that is is an attempt to mislead you. Put yourself in her situation. Put yourself in [the teacher's] and Jamie's situation. They've got 25 children running around, 25 to 30 children running around the playground. Right over there is Mr. Bradbury with this mean, aggressive, intimidating look on his face. What are they going to do?

{¶ 34} Bradbury argues that these statements were prejudicial because they cast him as an "aggressive, threatening bully," and that the statements "fanned the flames of fear in much the same way our politicians are attempting to frighten us with the Syrian refugees." After reviewing the prosecutor's closing argument in its totality, we do not find the four statements prejudicially affected Bradbury's substantial rights or denied him a fair trial.

{¶ 35} While it would have been preferable for the prosecution not to ask the jurors to place themselves in the position of witnesses, such statements are not per se prejudicial. Instead, the statements must have denied Bradbury a fair trial. We find that they did not. The record indicates that even absent these statements, the jury heard testimony from the teacher and from Jamie, both of whom directly observed Bradbury glaring at them. The witnesses specifically testified to the manner in which Bradbury glared at them, and why the incident was more than mere staring or Bradbury simply looking in their direction. Both indicated that the glare made them feel uneasy and uncomfortable, and that the glare lasted approximately 15-20 seconds. Thus, and even absent the prosecutor's statements, it appears clear beyond a reasonable doubt that the jury would have found the defendant guilty even without the improper comments.

{¶ 36} Moreover, the statements, while inappropriate for asking the jury to put

themselves in the position of others (including Todd, the teacher, and Jamie), nonetheless also addressed specific evidence admitted at trial, and focused upon reasonable inferences the jury could draw from the evidence. Despite Bradbury's argument to the contrary, the prosecutor's statements did not attempt to cast Bradbury in any manner that was not already raised at trial, nor were the statements an emotional ploy made in an attempt to frighten the jurors against Bradbury. The prosecutor's statements in context were merely comments about the evidence and Bradbury's behavior toward the Minniear family, as well as the school and its teachers, students, and parents. Although perhaps inartful, the comments attempted to address why the Minniears sought a protection order, and why the witnesses were reasonable in their perception of, and reaction to, Bradbury's conduct.

{¶ 37} Moreover, the last statement regarding whether the teacher had reason to lie about the incident, was specific to Bradbury's counsel suggesting during his closing argument that the teacher was not credible. As such, the prosecutor's statement was given in response to a direct assertion raised in the defendant's closing argument, and did not prejudice Bradbury in any way.

{¶ 38} After reviewing the totality of closing argument, we find that the prosecutor's statements did not deprive Bradbury of a fair trial. This is especially true where the evidence clearly indicated the existence of a protection order and Bradbury's violation of that order.

{¶ 39} Bradbury also argues that the prosecutor committed misconduct by commenting on his failure to testify by stating "the evidence we presented, ladies and gentlemen, is uncontradicted," and "what did the evidence for the last day-and-a-half day [sic] show you, uncontroverted evidence."

{¶ 40} A prosecutor's reference in closing arguments to uncontradicted evidence "is not a comment on the accused's failure to testify where the comment is directed to the strength of the state's evidence and not to the silence of the accused, and the jury is

instructed not to consider the accused's failure to testify for any purpose." *State v. Ferguson*, 5 Ohio St.3d 160, 163 (1983). A prosecutor "is not prevented from commenting upon the failure, on the part of the defense, to offer any other evidence in support of its case." *State v. Rager*, 12th Dist. Butler No. CA2003-05-132, 2004-Ohio-2485, ¶ 16.

{¶ 41} After reviewing the closing argument in full, we find that the prosecutor's comment was directed to the strength of the state's evidence, rather than the silence of the accused. Given that no witness testified that Bradbury had not glared at Jamie and the teacher, the prosecutor's comment was accurate. Further, the trial court specifically instructed the jury that "the fact that [Bradbury] did not testify must not be considered for any purpose."

{¶ 42} After a full review of the record and the closing arguments of the parties, we find that the prosecutor's statements did not deprive Bradbury of a fair trial. Nor did the prosecutor's reference to the strength of its case amount to an improper statement on Bradbury's decision not to testify in his own defense. In the absence of plain error, or otherwise, Bradbury's first and second assignments of error are overruled.

{¶ 43} Judgment affirmed.

M. POWELL, P.J., and S. POWELL, J., concur.