[Cite as *State v. Wright*, 2018-Ohio-1982.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

FAYETTE COUNTY


| | | |
|---|---|---|
| STATE OF OHIO, | : | CASE NO. CA2017-10-021 |
| Plaintiff-Appellee, | : | O P I N I O N<br>5/21/2018 |
| | : | |
| - vs - | : | |
| | : | |
| DONNIE E. WRIGHT, | : | |
| Defendant-Appellant. | : | |


CRIMINAL APPEAL FROM FAYETTE COUNTY COURT OF COMMON PLEAS
Case No. CRI 20170148


Jess C. Weade, Fayette County Prosecuting Attorney, Fayette County Courthouse, 110 E. Court St., 1st Floor, Washington, C.H., Ohio 43160, for plaintiff-appellee

Steven H. Eckstein, 1208 Bramble Ave., Washington C.H., Ohio 43160, for defendant-appellant


**M. POWELL, J.**

{¶ 1} Defendant-appellant, Donnie Wright, appeals his conviction and sentence in the Fayette County Court of Common Pleas for unlawful sexual conduct with a minor.

{¶ 2} In early December 2016, appellant began dating a woman ("Mother"). Within days, appellant moved into Mother's house. Mother has a daughter ("the victim") who also resided with her. Later that month, appellant began having sexual intercourse with the

victim. The victim was 14 years old; appellant turned 49 years old on December 30, 2016. Between December 2016 and late February 2017, as appellant's relationship with Mother continued, appellant engaged in sexual intercourse with the victim multiple times a day in his car or in Mother's home. The sexual abuse ended on March 1, 2017, after the victim confessed to a family friend ("Family Friend") who informed Mother. The police were notified on March 3, 2017; four days later, Detective Thomas Queen of the Washington Court House Police Department began an investigation. During the investigation, the detective interviewed the victim. He also interviewed Mike Ratliff, a former lifelong friend of appellant. In April 2017, the victim had a forensic interview at the Child Protection Center of Ross County which included a medical examination by Dr. Amy Luckeydoo, a pediatrician.

{¶ 3} Appellant was indicted in May 2017 on five counts of unlawful sexual conduct with a minor. Each count included the specification that appellant was ten or more years older than the victim. A jury trial was held on October 14, 2017.[1] The victim, Dr. Luckeydoo, Detective Queen, Family Friend, and Ratliff testified on behalf of the state Appellant did not testify or present witnesses on his behalf.

{¶ 4} Dr. Luckeydoo testified that during the medical examination, the victim stated that she and appellant had vaginal intercourse on several occasions and that it ended in March 2017. The victim further told the physician that appellant had bought her a ring which she refused to wear, and that he had told her she should not tell anybody about their relationship.

{¶ 5} Family Friend became suspicious of a sexual relationship between appellant and the victim when she observed the two holding hands for long periods of time and kissing

---

1. The record shows that a first jury trial was held on August 23, 2017. That jury trial ended in a hung jury and a mistrial was declared.

- 2 -

on the lips in a nonplatonic manner on several occasions. Family Friend testified that when she accompanied the victim to a hospital one day, she observed the victim receiving several text messages from appellant. In particular, one of the text messages stated, "What if you are pregnant, it would be mine?" On cross-examination, Family Friend admitted she did not personally see appellant's name or phone number on those text messages. Rather, the victim told her that the text messages were from appellant.

{¶ 6} Family Friend further testified that on one occasion, appellant and the victim stayed at home while Family Friend and Mother went somewhere. When Family Friend came back to the house, the victim, who was "a little bit worked up or excited," told her that appellant "had just fucked her on a * * * table." Family Friend eventually confronted the victim and the latter admitted she was having a sexual relationship with appellant. Family Friend told Mother. The two women confronted appellant who packed his belongings and left Mother's home.

{¶ 7} Ratliff testified that while he and appellant were having a beer one day, appellant told him that he and the victim "were having sex." Ratliff stated that appellant told him about the sexual relationship on about four separate occasions. Ratliff did not tell anyone until August 2017 when Detective Queen came to his home to interview him. Ratliff explained he was no longer talking to appellant as the two recently had a falling out on an unrelated matter.

{¶ 8} Detective Queen provided appellant's date of birth and testified that appellant was 49 years old. The detective testified he interviewed Ratliff on August 24, 2017. By then, Ratliff and appellant were no longer speaking to one another. During her interview with the detective, the victim admitted that she and appellant had engaged in sexual intercourse over several months, three to four times a day. The victim, however, denied having sex on the kitchen table because "it would break if she did." The detective testified

he retrieved the victim's cellphone. However, only a handful of text messages was recovered as the victim had deleted her text and Facebook messages. The detective further testified that he did not request a rape kit and that there was no DNA or other forensic evidence to be collected due to the passage of time and the fact appellant was living in Mother's home and dating Mother at the same time he was having sexual intercourse with the victim.

{¶ 9} The victim testified that she and appellant started to have sexual intercourse the same month appellant began dating Mother and moved into Mother's home. The victim was 14 years old and was never married to appellant. Although the victim indicated she wanted the relationship, appellant was the one who sought out the relationship. Appellant further asked her if she "could have his kids." While appellant never bought her a ring or anything else, he promised her he would buy her a ring, "a house and just basically everything."

{¶ 10} The victim testified she and appellant had intercourse several times a day, in his car or in Mother's home. The victim admitted having sex on the kitchen table. They stopped having sex on February 20, 2017, because she was constipated and menstruating. The victim testified the relationship ended when she told Family Friend about it and Family Friend told Mother.

{¶ 11} The victim admitted she lied to several persons regarding her relationship with appellant. Specifically, she lied to Mother when she told her she was not in a relationship with appellant. She lied to Detective Queen when she denied having sex with appellant on the kitchen table. The victim explained she lied to the detective because she was scared and having sex on a kitchen table is "disgusting." The victim lied to Dr. Luckeydoo when she told her appellant had given her a ring. The victim could not explain why she had lied "about something so small" when she had admitted to Dr. Luckeydoo that she was in a

- 4 -

sexual relationship with appellant.

**{¶ 12}** After the state rested its case-in-chief, Counts 1 and 5, which respectively covered the time period of November 2016 and March 2017, were dismissed at the state's request. Appellant moved for a Crim.R. 29(A) acquittal, which was overruled by the trial court. After the jury retired to deliberate, appellant advised the trial court that as the jury was exiting the courtroom and passing by the victim, he heard the victim utter the word "guilty." Appellant moved for a mistrial, arguing that the victim's improper communication with the jury raised concerns about the jury's ability to be unbiased.

**{¶ 13}** The trial court first asked the prosecutor and defense counsel whether they had heard anything. They had not. At the trial court's directive, the prosecutor questioned the victim's advocate who was seated near the victim when the jury retired to deliberate. The victim's advocate testified she did not hear either the victim or Mother utter the word "guilty" as the jury retired. The trial court next sent a written question to the jurors, asking them, "Did any juror hear any remark from anyone in the audience as you were exiting the courtroom?" The jury foreperson reported to the trial court that all jurors answered "No." The trial court then allowed appellant to proffer "what he believes took place," namely, that as the jury walked by the victim, he heard either the victim or Mother say "guilty" twice.

**{¶ 14}** After the jury reached a verdict but before the verdict was read, the trial court personally asked the jurors whether "any of the 12 of you that deliberated this case, as you were exiting the jury box and on your way into the jury room[,] hear any remark or comment from anyone in the audience?" Once again, the jurors replied "No." Consequently, the trial court found that "the record reflects that unanimously no one heard any remark from anyone in the audience as they were exiting the courtroom," and implicitly overruled appellant's motion for a mistrial.

**{¶ 15}** The jury found appellant guilty of unlawful sexual conduct with a minor as

charged in Counts 2, 3, and 4, and further found that appellant was ten years older than the victim at the time of the offenses. The trial court sentenced appellant to an aggregate eight-year prison term and classified him as a Tier II sex offender. At the sentencing hearing, the trial court stated, "Costs are suspended in this case." However, in its judgment entry, the trial court ordered appellant "to pay the costs of prosecution for which judgment and execution is awarded."

{¶ 16} Appellant now appeals, raising four assignments of error. The first and second assignments of error will be considered together.

{¶ 17} Assignment of Error No. 1:

{¶ 18} THE TRIAL COURT ERRED IN DENYING WRIGHT'S CRIM.R. 29 MOTION FOR ACQUIT[T]AL AS THE EVIDENCE PRESENTED WAS INSUFFICIENT TO CONCLUDE THAT GUILT HAD BEEN PROVEN BEYOND A REASONABLE DOUBT IN VIOLATION OF HIS RIGHTS TO DUE PROCESS AND A FAIR TRIAL UNDER THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND ARTICLE I, SECTIONS 10 AND 16 OF THE OHIO CONSTITUTION.

{¶ 19} Assignment of Error No. 2:

{¶ 20} THE TRIAL COURT ERRED IN ENTERING A FINDING OF GUILTY BECAUSE SUCH VERDICT WAS AGAINST THE MANIFEST [ ] WEIGHT OF THE EVIDENCE. FIFTH AND FOURTEENTH AMENDMENTS, UNITED STATES CONSTITUTION, AND ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION.

{¶ 21} Appellant argues that his conviction for unlawful sexual conduct with a minor is not supported by sufficient evidence and is against the manifest weight of the evidence because there was no physical evidence of the offense, and the state's evidence consisted of the testimony of the victim, "who was shown to be a liar," and the testimony of various state witnesses who simply repeated what the victim had told them. In other words,

appellant asserts that "[b]oiling it all down[,] the state ha[d] only one witness who has a penchant for lying."

{¶ 22} Crim.R. 29(A) provides that "[t]he court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." An appellate court reviews the denial of a Crim.R. 29(A) motion pursuant to the same standard as that used to review a sufficiency-of-the-evidence claim. *State v. Workman*, 12th Dist. Clermont Nos. CA2016-12-082 and CA2016-12-083, 2017-Ohio-8638, ¶ 19.

{¶ 23} When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would support a conviction. *Id.* at ¶ 20. The relevant inquiry is "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Watson*, 12th Dist. Warren No. CA2014-08-110, 2015-Ohio-2321, ¶ 22.

{¶ 24} A manifest weight of the evidence challenge, on the other hand, examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Bradbury*, 12th Dist. Butler No. CA2015-06-111, 2016-Ohio-5091, ¶ 17. To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Id.* An appellate court will overturn a conviction due to the manifest weight of the

evidence only in extraordinary circumstances when the evidence presented at trial weighs heavily in favor of acquittal. *Id.* at ¶ 18. A "determination that a conviction is supported by the manifest weight of the evidence will also be dispositive of the issue of sufficiency." *State v. Peyton*, 12th Dist. Butler No. CA2015-06-112, 2017-Ohio-243, ¶ 48.

**{¶ 25}** Appellant was convicted of unlawful sexual conduct with a minor in violation of R.C. 2907.04(A), which provides that no "person who is eighteen years of age or older shall engage in sexual conduct with another, who is not the spouse of the offender, when the offender knows the other person is thirteen years of age or older but less than sixteen years of age, or the offender is reckless in that regard." Sexual conduct includes "vaginal intercourse between a male and female." R.C. 2907.01(A).

**{¶ 26}** Upon thoroughly reviewing the record, we find that the jury did not lose its way and create a manifest miscarriage of justice in finding appellant guilty of unlawful sexual conduct with a minor and in finding that he was ten years older than the victim at the time of the offense. At the time of the sexual abuse, the victim was 14 years old and was not married to appellant. Appellant was over the age of 18 and 35 years older than the victim. The victim testified that she and appellant engaged in sexual intercourse multiple times a day for three months and that the relationship only ended when she told Family Friend about it. This testimony, if believed, was enough to convict appellant of unlawful sexual conduct with a minor. *State v. Jones*, 12th Dist. Butler No. CA2012-03-049, 2013-Ohio-150, ¶ 21. "In sex offense cases, Ohio courts have consistently held that a victim's testimony need not be corroborated in order to support a conviction." *Id.*

**{¶ 27}** Appellant nevertheless challenges his conviction, arguing that the state's evidence consisted solely of the testimony of the victim, "who was shown to be a liar," and the testimony of various state witnesses who simply repeated what the victim had told them.

**{¶ 28}** Contrary to appellant's assertion, the evidence presented by the state did not

solely consist of the victim's testimony and the testimony of various state witnesses who simply repeated what the victim had told them.  While it is true that Detective Queen, Dr. Luckeydoo, and Family Friend all testified as to what appellant had told them, Family Friend further testified she observed appellant and the victim hold hands for long periods of time and kiss on the lips on several occasions.  Family Friend noted that the kissing was not platonic.  Additionally, Ratliff testified that on more than one occasion, appellant told him he was having sex with the victim.

{¶ 29} Furthermore, the inconsistencies between the victim's statements to Detective Queen and Dr. Luckeydoo and her trial testimony did not relate to the victim's claim that she was engaged in a sexual relationship with appellant.  *Jones*, 2013-Ohio-150 at ¶ 21.  Indeed, while the victim lied about a ring and having sex on the kitchen table, she never denied having sexual intercourse with appellant when questioned by the detective, when examined by the physician, and when confronted by Family Friend.  In addition, during her trial testimony, the victim admitted she had lied to several persons and tried to explain why she had done so.

{¶ 30} Consequently, we decline to overturn the jury's verdict because the victim "was shown to be a liar."  As the trier of fact, the jury was in the best position to judge her credibility and determine what weight to give to her testimony.  *State v. Smith*, 12th Dist. Warren Nos. CA2012-02-017 and CA2012-02-018, 2012-Ohio-4644, ¶ 42.  By its verdict, the jury plainly chose to credit the testimony of the victim.

{¶ 31} Appellant further challenges his conviction, arguing there was no physical evidence to corroborate the victim's allegations.  We have held that a lack of physical evidence of a sex offense does not mean the offense did not occur as testified by a victim. *See State v. Childers*, 12th Dist. Warren No. CA2014-02-034, 2014-Ohio-4895. Ohio courts have further held that there is no requirement that a defendant's conviction for a sex offense,

including one for unlawful sexual conduct with a minor, be based on physical evidence. *See State v. Wareham*, 3d Dist. Crawford No. 3-12-11, 2013-Ohio-3191; *State v. J.E.C., Jr.*, 10th Dist. Franklin No. 12AP-584, 2013-Ohio-1909.

{¶ 32} While appellant is correct that no physical evidence implicates him, circumstantial evidence and direct evidence inherently have the same probative value, and in some instances, certain facts can only be established by circumstantial evidence. *State v. Jenks*, 61 Ohio St.3d 259, 272 (1991); *State v. Petit*, 12th Dist. Madison No. CA2016-01-005, 2017-Ohio-633, ¶ 18. A conviction based on circumstantial evidence is no less sound than one based on direct evidence. *Petit* at ¶ 18. The victim and Ratliff both testified about appellant's sexual relationship with the victim. Furthermore, given the passage of time between the last act of sexual intercourse on February 20, 2017, and the March 3, 2017 call to the police, and the fact appellant was dating Mother and living in Mother's home at the same time he was having sexual intercourse with the victim, physical evidence with any evidentiary value was unlikely to exist and its absence is understandable. *See State v. Woodward*, 12th Dist. Butler No. CA2011-02-036, 2011-Ohio-6019.

{¶ 33} In light of the foregoing, we find that appellant's conviction for unlawful sexual conduct with a minor is not against the manifest weight of the evidence. The jury heard all of the testimony, considered the evidence, and found the state's theory of the case and its witnesses credible, and we will not disturb the jury's verdict on appeal. Our determination that the conviction is supported by the weight of the evidence is also dispositive of the issue of sufficiency. *Peyton*, 2017-Ohio-243 at ¶ 48.

{¶ 34} Appellant's first and second assignments of error are overruled.

{¶ 35} Assignment of Error No. 3:

{¶ 36} WRIGHT WAS DENIED A FAIR TRIAL WHEN THE TRIAL COURT OVERRULED HIS MOTION FOR A MISTRIAL DENYING HIM OF HIS DUE PROCESS

RIGHTS UNDER THE UNITED STATES AND OHIO CONSTITUTIONS.

{¶ 37} Appellant argues the trial court erred in denying his motion for a mistrial. Appellant asserts the jury could not be impartial during its deliberations given the victim's improper communication with the jury when it retired to deliberate and the trial court's failure to have the victim questioned about such communication.

{¶ 38} Trial courts have broad discretion in deciding whether to grant a mistrial. *State v. Ahmed*, 103 Ohio St.3d 27, 2004-Ohio-4190, ¶ 92. "The granting of a mistrial is necessary only when a fair trial is no longer possible." *State v. Conway*, 108 Ohio St.3d 214, 2006-Ohio-791, ¶ 160. A trial court is in the best position to determine whether the situation in the courtroom warrants a mistrial. *State v. Glover*, 35 Ohio St.3d 18, 19 (1988).

{¶ 39} "In a criminal case, any private communication, contact, or tampering, directly or indirectly, with a juror during a trial about the matter pending before the jury is * * * deemed presumptively prejudicial, if not made in pursuance of known rules of the court and the instructions and directions of the court made during the trial, with full knowledge of the parties." *Remmer v. United States*, 347 U.S. 227, 229, 74 S.Ct. 450 (1954).

{¶ 40} In cases involving outside influences on jurors, trial courts are granted broad discretion in dealing with the contact and determining whether to declare a mistrial or to replace an affected juror. *Conway*, 2006-Ohio-791 at ¶ 160. Claims of juror partiality may be vindicated in a hearing in which the defendant has an opportunity to prove actual bias. *Id.* The defense must establish that the improper communication biased one or more jurors. *State v. Herring*, 94 Ohio St.3d 246, 259 (2002). A trial court is permitted to rely on a juror's testimony in determining that juror's impartiality. *Conway* at ¶ 163.

{¶ 41} Upon learning that the victim had allegedly improperly communicated with the jury as it retired to deliberate, the trial court first asked the prosecutor and defense counsel whether they had heard anything. They had not. At the trial court's directive, the prosecutor

questioned the victim's advocate who was seated near the victim when the jury retired to deliberate. The victim's advocate testified she did not hear any comment from the victim as the jury retired. Subsequently, the trial court twice questioned the jurors about the comment, first via a written question sent to the deliberation room, and then, after the jury had reached a verdict but before the verdict was read. Both times, the jurors denied hearing any remark when they exited the courtroom to deliberate. Neither the state nor defense counsel objected to the questioning or requested any additional inquiry. Appellant now asserts that the trial court should have allowed him to question the victim about her statement to the jury. However, appellant never requested that the victim be questioned about the matter.

{¶ 42} In light of the foregoing, we find that the trial court did not abuse its discretion in denying appellant's motion for a mistrial. Appellant has failed to establish that an improper communication or contact occurred between the victim and the jury and has failed to present any evidence that the jury was improperly influenced by the victim. *See Wright v. Angelone*, 151 F.3d 151 (4th Cir.1998).

{¶ 43} Appellant's third assignment of error is overruled.

{¶ 44} Assignment of Error No. 4:

{¶ 45} WRIGHT'S SENTENCE IS CONTRARY TO LAW.

{¶ 46} Appellant argues, and the state concedes, that the trial court erred in ordering appellant to pay "the costs of prosecution" in its judgment entry when the trial court expressly stated that such "costs [were] suspended" at the sentencing hearing. In support of his argument, appellant cites this court's opinion in *State v. Brannon*, 12th Dist. Butler No. CA2016-05-096, 2017-Ohio-628.

{¶ 47} We review appellant's sentence under the standard of review set forth in R.C. 2953.08(G)(2), which governs all felony sentences. *State v. Marcum*, 146 Ohio St.3d 516,

2016-Ohio-1002, ¶ 1. Pursuant to that statute, an appellate court may "increase, reduce, or otherwise modify a sentence * * * or may vacate the sentence and remand the matter to the sentencing court for resentencing" if the appellate court finds by clear and convincing evidence that "the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law." *Id.*; R.C. 2953.08(G)(2)(a)-(b).

{¶ 48} R.C. 2947.23(A)(1)(a) provides that a trial court "shall include in the sentence the costs of prosecution, including any costs under [R.C.] 2947.231, and render a judgment against the defendant for such costs." However, despite the mandatory language of the statute, a trial court may waive the payment of costs. *Brannon*, 2017-Ohio-628 at ¶ 37. Because the imposition of court costs is civil in nature and distinct from a criminal punishment, an error by the trial court in imposing court costs "does not create [a] taint on the criminal sentence," but rather, "only [affects] the court and the defendant." *Id.*; S*tate v. Joseph*, 125 Ohio St.3d 76, 2010-Ohio-954, ¶ 20-21. Furthermore, a trial court's inadvertent error does not render a sentence contrary to law; rather, such a clerical mistake may be corrected by the court through a nunc pro tunc entry to reflect what actually occurred in open court. *Brannon* at ¶ 37; *State v. Bonnell*, 140 Ohio St. 3d 209, 2014-Ohio-3177, ¶ 30.

{¶ 49} As stated above, the trial court expressly stated, "Costs are suspended in this case" at the sentencing hearing. However, the trial court's judgment entry ordered appellant "to pay the costs of prosecution." As in *Brannon*, we are unable to determine whether the trial court intended to impose court costs given the discrepancy between the trial court's statement at sentencing that court costs were suspended and the judgment entry's imposition of such costs. The sentence did not become a final order until the sentencing entry was journalized. *Brannon* at ¶ 40. Therefore, even though the trial court stated during the sentencing hearing that court costs would be suspended, the court remained free to impose court costs. However, if the trial court intends to impose court costs, it must do so

- 13 -

in appellant's presence. *Id.*; Crim.R. 43(A).

{¶ 50} Appellant's fourth assignment of error is sustained.

{¶ 51} We therefore reverse and remand this matter to the trial court for the limited purpose of imposing costs. Upon remand, the trial court shall either conduct a further sentencing hearing in the presence of appellant to make a determination with respect to the imposition of court costs or simply issue a nunc pro tunc sentencing entry waiving court costs consistent with its statement at appellant's sentencing hearing. *Brannon*, 2017-Ohio-628 at ¶ 40. In all other respects, the trial court's judgment is affirmed.

{¶ 52} Judgment affirmed in part, reversed in part, and remanded to the trial court for further proceedings.

RINGLAND, P.J., and PIPER, J., concur.