[Cite as *State v. Danzy*, 2021-Ohio-1483.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| v. | : | No. 109433 |
| DREW ELLIS DANZY, | : | |
| Defendant-Appellant. | : | |

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** April 29, 2021

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-18-629916-A

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Melissa Riley, Assistant Prosecuting Attorney, *for appellee.*

Edward M. Heindel, *for appellant.*

LARRY A. JONES, SR., J.:

{¶ 1} Defendant-appellant, Drew Ellis Danzy ("Danzy"), appeals his conviction for rape. Finding no merit to the appeal, we affirm.

{¶ 2} In 2018, Danzy was charged in connection with the 2001 rape and kidnapping of I.W. He was charged with one count of rape, with a notice of prior

conviction and repeat violent offender specification, and one count of kidnapping with notice of prior conviction, repeat violent offender specification, sexual motivation specification, and sexually violent predator specification.

{¶ 3} Danzy filed a motion to dismiss his indictment due to preindictment delay. The state opposed the motion, and the trial court denied the motion. The case proceeded to a jury trial in December 2019.

{¶ 4} I.W. testified that on April 27, 2001, she set off on foot from her house in Cleveland to see her former husband at Colombian Vise, where he was employed as a machinist, to talk about their son, who was being disruptive at school. According to I.W., it usually took her about an hour to walk from her house to the factory. On that particular day, it was hot and she was very tired. She testified that a man driving a silver car pulled up next to her, rolled down the windows, and asked, "Miss, would you like a ride?"'

{¶ 5} I.W. accepted the man's offer and got into the front seat of the silver car. I.W. told the driver she was going to Colombian Vise and he said he knew where it was located, but instead of taking her to the factory, he drove to a garage, pulled in, and parked. I.W. testified that the man told her to take her pants off. She tried to get out of the car, but the man grabbed her by the back of her hair.

{¶ 6} I.W. testified she did not remember anything else because she blacked out. She does not know what caused her to black out, but testified that it was not from drinking or taking drugs. She guessed it was from the heat "because it was really hot that day." The next thing I.W. remembered was being found by a

man and woman on the sidewalk, with her underwear and pants down. She pulled them up. I.W. testified that she did not know the people who found her. The couple took I.W. to St. Michael's Hospital in a copper-colored car.

{¶ 7} I.W. testified that she was in the emergency room when a police officer approached her to ask questions. She was crying and scared. The officer asked her if she was "sure she was raped" and reached out to touch her hand. I.W. testified that she turned away from the officer because she did not want anyone to touch her.

{¶ 8} I.W. testified that she left the hospital and "ran" to her mother's house after the exam. She did not remember following up with the police to see if they investigated the case and did not hear anything from them until 2018 when some detectives came to her mother's house to question her.

{¶ 9} Nurse Arline Skoll ("Nurse Skoll") testified that she is a retired nurse and had worked in the emergency room at St. Michael's Hospital in April 2001. She was part of the team that treated I.W. I.W. told Skoll that she took a ride with an unknown male and when she was in his car, he pulled her hair and threatened her with a knife. He put the knife to I.W.'s throat and told her he would kill her if she did not give him what he wanted. I.W. told Skoll that she rarely drank alcohol, did not do drugs, and had not had sexual intercourse in three years. Nurse Skoll's notes indicated that I.W. "was inconsolable" and could not stop crying.

{¶ 10} As part of the examination, the hospital collected I.W.'s clothing and performed a rape kit collecting swabs and combings from multiple areas of I.W.'s

body: oral, perineal, vaginal, pubic and head hair, blood, and fingernail. When the rape kit was complete, it was released to the Cleveland police.

{¶ 11} Cleveland Police Detective Troy Edge ("Detective Edge") testified he was sent to St. Michael's Hospital on April 27, 2001, to pick up a rape kit and a bag of clothing belonging to I.W. At that time, the identity of I.W.'s attacker was unknown; Danzy was not a suspect.

{¶ 12} The rape kit was submitted to the Ohio Bureau of Criminal Investigation ("BCI") in January 2014. In 2016, during an unrelated investigation, the Cleveland police learned that Danzy might be a match to the DNA found in I.W.'s rape kit. The rape kit was tested and a DNA match was established. Emily Feldenkris ("Feldenkris"), a forensic scientist at BCI, testified that the vaginal, anal, and pubic hair samples contained DNA from both I.W. and Danzy. The anal sample contained additional DNA from a third unknown source, but the sample was too insufficient to make an interpretation or identification.

{¶ 13} Cuyahoga County Sheriff's Detective Patricia Siefer ("Detective Siefer") testified that she was assigned to the case as part of the sexual assault cold-case task force. As part of her investigation, she interviewed Danzy. Danzy denied having sexual intercourse with I.W.

{¶ 14} Detective Siefer also interviewed I.W. According to Detective Siefer, her review of the case file revealed that Cleveland police closed the file after I.W. was a "no show" to meet with police in 2001. Special Agent Stacy Fifer, who worked with Detective Siefer, showed I.W. a photo lineup that contained Danzy's

picture. I.W. did not recognize anyone in the photo lineup, but reiterated that she did not have consensual sex with her attacker.

{¶ 15} Danzy testified in his own defense. He testified that he was a "heavy drug addict" from 1990 until 2010. He was addicted to crack cocaine and was also involved with various women with whom he would smoke drugs and have sexual intercourse at either his house or another "smokehouse" in the area.

{¶ 16} Danzy testified that, in 2001, he was involved in drugs and casual sexual activity. He denied having a car in 2001 or raping I.W. He testified that he "used to see the woman out there on the streets" and "[w]e might have got together and [had] consensual sex."

{¶ 17} On cross-examination, Danzy admitted he was convicted of felonious assault with a violence specification against a female victim in 1996.

{¶ 18} The jury acquitted Danzy of kidnapping but convicted him of rape. The state dismissed the repeat violent offender specification, and the trial court found Danzy guilty of the notice of prior conviction specification. The court sentenced Danzy to five years in prison.

{¶ 19} Danzy filed a notice of appeal and raises the following assignments of error for our review:

> I. The trial court erred when it denied Danzy's motion to dismiss for preindictment delay in violation of Danzy's federal and state due process rights.
>
> II. The trial court erred when it allowed the prosecution to cross-examine Danzy about his 16-year old conviction for felonious assault.
>
> III. Danzy was denied his right to a speedy trial.

IV. The conviction was not supported by sufficient evidence.

V. The conviction was against the manifest weight of the evidence.

**Preindictment Delay**

{¶ 20} In the first assignment of error, Danzy claims that the trial court erred when it denied his motion to dismiss the case against him due to preindictment delay.

{¶ 21} The statute of limitations for a criminal offense is a defendant's primary protection against overly stale criminal charges. *United States v. Marion*, 404 U.S. 307, 322, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). However, the Due Process Clause of the Fifth Amendment provides additional protection in cases where the preindictment delay was unjustifiable and caused actual prejudice. *United States v. Lovasco*, 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977); *State v. Jones*, 148 Ohio St.3d 167, 2016-Ohio-5105, 69 N.E.3d 688, ¶ 12.

{¶ 22} The Ohio Supreme Court has established a burden-shifting framework for analyzing a due process claim based on preindictment delay. *Jones* at ¶ 13. Under this framework, the defendant bears the initial burden of presenting evidence of actual prejudice. *Id.* "Once a defendant presents evidence of actual prejudice, the burden shifts to the state to produce evidence of a justifiable reason for the delay." *Id.*, citing *State v. Whiting*, 84 Ohio St.3d 215, 217, 702 N.E.2d 1199 (1998); *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, ¶ 99. Thus, if the defendant fails to establish actual prejudice, the court is not required to consider the reasons for the delay. *Adams* at ¶ 107.

{¶ 23} "A court must 'consider the evidence as it exists when the indictment is filed and the prejudice the defendant will suffer at trial due to the delay.'" *Id.*, quoting *State v. Walls*, 96 Ohio St.3d 437, 2002-Ohio-5059, 775 N.E.2d 829, ¶ 52. A claim of actual prejudice should be scrutinized "vis-a-vis the particular evidence that was lost or unavailable as a result of the delay" and "the relevance of the lost evidence and its purported effect on the defense." *State v. Robinson*, 8th Dist. Cuyahoga No. 107950, 2019-Ohio-4458, ¶ 28, citing *Walls* at *id.*

{¶ 24} Danzy contends he provided sufficient evidence to warrant a hearing on his motion to see if he could establish actual prejudice. He claims that evidence was lost and witnesses could no longer be found. Specifically, he argues that if the case had been properly indicted in 2001, they could have investigated the car in which I.W. alleged the rape occurred and located the two people who took I.W. to the hospital.

{¶ 25} We disagree. Danzy testified that he did not own a car in 2001; therefore, it was his claim that no car existed and we cannot see how that evidence could be lost if it did not, as Danzy claims, even exist. With regard to the two people who found I.W. and took her to the hospital, I.W. testified that she did not know them and Danzy has not offered what the two people would have testified to that would have bolstered his defense. Although a defendant is not required to establish precisely what an unavailable witness would have testified to at trial, "there must be some indication in the record of what the missing evidence or unavailable witness might have offered." *State v. Richardson*, 2016-Ohio-5843, 70

N.E.3d 1175, ¶ 13 (8th Dist.). Here, because the two people who took I.W. to the hospital were never identified, let alone identified as witnesses, there is nothing in the record demonstrating what their unavailable testimony might have offered. *See State v. Knox*, 8th Dist. Cuyahoga No. 107414, 2019-Ohio-1246, ¶ 37. Thus, we do not find that Danzy would have been able to establish actual prejudice.

{¶ 26} Because Danzy is unable to show actual prejudice, the state is not required to show the reason for their delay in commencing prosecution. *See Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, at ¶ 107, citing *United States v. Schaffer*, 586 F.3d 414, 425 (6th Cir.2009). That said, even if Danzy had established actual prejudice, the state produced evidence of a justifiable reason for delay in the commencement of prosecution.

{¶ 27} A delay may be found unjustifiable when the state's reason for the delay is to intentionally gain a tactical advantage over the defendant, "or when the state, through negligence or error in judgment, effectively ceases the active investigation of a case, but later decides to commence prosecution upon the same evidence that was available to it at the time that its active investigation was ceased." *Knox* at ¶ 41, citing *State v. Luck*, 15 Ohio St.3d 150, 158, 472 N.E.2d 1097 (1984). There is nothing in the record to suggest that the state used the delay in this case to gain a tactical advantage over Danzy, or that the state ceased its investigation and then, without new information, decided to prosecute.

{¶ 28} The record demonstrates that a rape-kit examination was conducted in 2001. Contrary to Danzy's assertion, there is no evidence that the state was in

possession of his DNA in 2001 and he was not a suspect at that time — I.W. did not know the man who raped her. Despite the police attempts to investigate the case, I.W. failed to appear to be interviewed and the case was closed. The case was reopened in 2014 when the police sent I.W.'s rape kit to BCI to be processed but it was not until 2016 that BCI discovered a potential DNA match. BCI made the Cleveland police aware of the potential match and the investigation proceeded.

{¶ 29} In light of these facts, there is nothing to suggest that the reasons for the delay in indicting Danzy were for anything other than investigative purposes.

{¶ 30} Therefore, the trial court did not err in denying Danzy's motion to dismiss for preindictment delay. The first assignment of error is overruled.

**Cross-Examination**

{¶ 31} In the second assignment of error, Danzy contends that the trial court erred in allowing the state to cross-examine him about a previous conviction for felonious assault.

{¶ 32} A trial court is vested with broad discretion regarding decisions to admit or exclude relevant evidence in a trial. *State v. Myers*, 97 Ohio St.3d 335, 351, 780 N.E.2d 186 (2002). A reviewing court will not reverse a trial court's decision on the admission or exclusion of evidence absent an abuse of discretion. *State v. Sage*, 31 Ohio St.3d 173, 180, 510 N.E.2d 343 (1987).

{¶ 33} During Danzy's cross-examination, he testified to the following:

Danzy: Well, see, a lot of people would bring drugs to me because * * * of what I had and the quietness, the privacy and the paraphernalias [sic]. And I wasn't a violent, I wasn't that type of

person. And I used to have a lot of women come to me and smoke with me.

{¶ 34} After this exchange, the state indicated to the court at sidebar that it planned on questioning Danzy about his 1996 conviction for felonious assault to rebut his statement that he was not a violent person. Defense counsel objected. After hearing arguments and allowing the parties to brief the issue, the trial court overruled defense counsel's objection, finding that Danzy had opened the door to introduction of his violent character by claiming he was nonviolent.

{¶ 35} While the Rules of Evidence generally prohibit the use of character evidence to show that an accused has the propensity to commit the crime with which he or she stands charged, *see State v. Thompson*, 66 Ohio St.2d 496, 497, 422 N.E.2d 855 (1981), it is well-established that once an accused puts evidence of a pertinent character trait in issue, the prosecution may offer evidence to rebut the accused's character evidence. *See* Evid.R. 404(A)(1).

{¶ 36} Specifically, Evid.R. 404(A)(1) provides:

Evidence of a pertinent trait of [the accused's] character offered by an accused, or by the prosecution to rebut the same is admissible; however, in prosecutions for rape, gross sexual imposition, and prostitution, the exceptions provided by statute enacted by the General Assembly are applicable.

{¶ 37} Thus, Evid.R. 404(A)(1) permits a criminal defendant to choose to "offer evidence of his [or her] good character as proof that he [or she] did not commit the act charged because such conduct is not in accord with his [or her] character." Gianelli, *Giannelli Snyder Evidence* at 229 (1996). "If the accused offers evidence of his [or her] good character," however, "the prosecution [may]

offer evidence of the bad character of the accused." *Id.* By introducing such evidence, the defendant "opens the door" for the prosecution, which is then permitted to rebut or impeach the character evidence on cross-examination. Evid.R. 405(A); *see also State v. Salyers*, 3d Dist. Allen No. 1-19-17, 2020-Ohio-147.

**{¶ 38}** This is precisely what occurred in this case. Danzy testified that he was a nonviolent person. The state rebutted that testimony with the following inquiry:

> State: So before yesterday when you told the jury that you were not a violent person, is that the truth or is that a lie?
>
> Danzy: Yes, that's the truth.
>
> State: Well, what about your conviction for felonious assault with a violence specification?
>
> Danzy: Well, ma'am, I took responsibility for that and I plead to it. And that was, like, 20 years ago.
>
> * * *
>
> State: And what you took responsibility for was for knowingly causing serious physical harm to ["A.M."], correct?
>
> Danzy: Yes, ma'am.
>
> State: And you also took responsibility for a violence specification?
>
> Danzy: Yes, ma'am.
>
> State: So when you said you were not a violent person, you just left out the violent parts, correct?
>
> Danzy: I am not a violent person.

State: Even though you were convicted of causing serious physical harm to ["A.M"]?

Danzy: Yes, ma'am, I did.

**{¶ 39}** Danzy portrayed himself as the type of person who was quiet, private, and attractive to women because he always had drugs or drug paraphernalia on him, and not violent. To rebut this testimony, the prosecution presented evidence to show that Danzy did not possess the character traits of a nonviolent person.

**{¶ 40}** Further, we note that even though his conviction for felonious assault occurred in 1996, outside the ten-year time limit prescribed by Evid.R. 609, it occurred closer in time to the 2001 incident for which he was on trial in this case.

**{¶ 41}** In light of the above, the second assignment of error is overruled.

**Speedy-Trial Rights**

**{¶ 42}** In the third assignment of error, Danzy contends that his right to a speedy trial was violated.

**{¶ 43}** As an initial matter, we note that Danzy did not raise this issue at the trial-court level; therefore, he has waived the issue for appeal. *State v. Mango*, 8th Dist. Cuyahoga No. 103146, 2016-Ohio-2935, ¶ 18. Even though he has waived the issue for purposes of appeal, we briefly review for plain error.

**{¶ 44}** Pursuant to R.C. 2945.71(C)(2), the state must bring a defendant to trial on felony charges within 270 days of arrest. Under the "triple count provision" contained in R.C. 2945.71(E), each day a defendant is held in jail in lieu

of bail counts as three days in the speedy trial time calculation. Therefore, a defendant held in jail without bail on a pending felony charge must be tried within 90 days. The statutory speedy trial period begins to run on the date the defendant is arrested, although the date of arrest is not counted when calculating speedy-trial time. *State v. Wells*, 8th Dist. Cuyahoga No. 98388, 2013-Ohio-3722, ¶ 44.

{¶ 45} Speedy-trial time is tolled by certain events delineated in R.C. 2945.72. Such tolling events include "[a]ny period of delay occasioned by the neglect or improper act of the accused," any period of delay "necessitated by reason of a plea in bar or abatement, motion, proceeding, or action made or instituted by the accused, and any continuances granted upon the accused's own motion," and a "period of any reasonable continuance granted" upon any other party's motion. R.C. 2945.72(D), (E), and (H). A defendant's demand for discovery tolls the speedy-trial time until the state responds to the discovery, or for a reasonable time, whichever is sooner. *State v. Shabazz*, 8th Dist. Cuyahoga No. 95021, 2011-Ohio-2260, ¶ 26, 31; R.C. 2945.72(E).

{¶ 46} Danzy was arraigned on July 12, 2018. Danzy spent one day in jail but immediately posted bond. Trial began on December 9, 2019, approximately 514 days after his arraignment. During the pretrial process, Danzy filed numerous motions, including four motions for discovery, multiple motions to withdraw counsel, motion for independent analysis, motions to dismiss, and motions to toll speedy trial, which was tolled four times due to continuances at Danzy's request. In addition, time was tolled for over four months when Danzy failed to respond to

the state's discovery request. *See State v. Garner*, 8th Dist. Cuyahoga No. 102816, 2016-Ohio-2623, ¶ 29.[1]

{¶ 47} Our review of the record shows no violation of Danzy's right to a speedy trial. The third assignment of error is overruled.

**Sufficient Evidence Supported Danzy's Rape Conviction**

{¶ 48} In the fourth assignment of error, Danzy contends that his conviction was not supported by sufficient evidence because the state did not prove beyond a reasonable doubt the element of "sexual conduct."

{¶ 49} When assessing a challenge to the sufficiency of the evidence, a reviewing court examines the evidence admitted at trial and determines whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* A reviewing court is not to assess "whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction." *State v. Thompkins*, 78 Ohio St.3d 380, 390, 678 N.E.2d 541 (1997).

---

[1]The state filed its demand for discovery on July 18, 2018. Using 30 days as a reasonable response time, Danzy's speedy-trial time was tolled until discovery was answered on February 12, 2019.

{¶ 50} Danzy was convicted of rape, in violation of R.C. 2907.02(A)(2) that provides that "[n]o person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force."

{¶ 51} As pertinent to this appeal, sexual conduct means "without privilege to do so, the insertion, however slight, of any part of the body * * * into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse." R.C. 2907.01(A).

{¶ 52} I.W. testified at trial that Danzy, whom she did not know, drove her to a garage and that she blacked out during the assault. When she woke up, she was on the sidewalk with her underwear and pants down. A couple drove her to the hospital where a rape kit was performed. I.W. told Nurse Skroll, who also testified at trial, that her attacker threatened her with a knife, that he did not wear a condom, and that he ejaculated inside her vagina. I.W. denied oral or rectal penetration. As part of the rape kit, oral, perineal, pubic and head hair, blood, fingernail, and vaginal specimens were collected. Feldenkris, the BCI forensic scientist, testified that Danzy's sperm fraction was found on the vaginal, pubic hair, and anal samples taken from I.W.

{¶ 53} This testimony, if believed by the trier of fact, is sufficient to fulfill the element of sexual conduct.

{¶ 54} The fourth assignment of error is overruled.

{¶ 55} In the fifth assignment of error, Danzy argues that his conviction was against the manifest weight of the evidence.

**{¶ 56}** A manifest-weight-of-the-evidence challenge examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Bradbury*, 12th Dist. Butler No. CA2015-06-111, 2016-Ohio-5091, ¶ 17. To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Id.* An appellate court will overturn a conviction due to the manifest weight of the evidence only in extraordinary circumstances when the evidence presented at trial weighs heavily in favor of acquittal. *Id.* at ¶ 18.

**{¶ 57}** Danzy contends that the conviction was against the manifest weight of the evidence because I.W. had difficulty remembering the incident, the knife, the car, and the two people who took her to the hospital were never found, and there was a third person's DNA found on the anal swab.

**{¶ 58}** At trial, I.W. acknowledged she had difficulty remembering the incident and blacked out during the attack. She testified she remembered waking up on the sidewalk with her underwear and pants down and that an unknown couple took her to the hospital. Although the presence of a third DNA was found on the anal swab, Feldenkris testified that the source of the DNA could not be

identified because there sample was insufficient and, therefore, Feldenkris could not determine if the DNA belonged to a man or a woman or how it got there.

{¶ 59} As the trier of fact, the jury was in the best position to see and hear the witnesses, and observe their demeanor, equivocation, and candor when it determined the weight to be given their testimony. By its verdict, the jury plainly chose to credit the testimony of the victim and conclude that Danzy's version was not credible. The jury heard all of the testimony, considered the evidence, and found the state's theory of the case and its witnesses credible, and we will not disturb the jury's verdict on appeal. Danzy's rape conviction is therefore not against the manifest weight of the evidence.

{¶ 60} The fifth assignment of error is overruled.

{¶ 61} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
LARRY A. JONES, SR., JUDGE

SEAN C. GALLAGHER, P.J., and
EILEEN A. GALLAGHER, J., CONCUR