[Cite as *State v. Wilkinson*, 2019-Ohio-1199.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellant, | : | CASE NO. CA2018-08-087 |
| | : | O P I N I O N |
| - vs - | | 4/1/2019 |
| | : | |
| DONALD E. WILKINSON, | : | |
| Appellee. | : | |

CRIMINAL APPEAL FROM WARREN COUNTY COURT
Case No. 2018TRC000414

David P. Fornshell, Warren County Prosecuting Attorney, Kirsten A. Brandt, 520 Justice Drive, Lebanon, Ohio 45036 for appellant

The Law Offices of Steven R. Adams, LLC, Steven R. Adams, 8 West Ninth Street, Cincinnati, Ohio 45202 for appellee

**S. POWELL, J.**

{¶ 1}   Appellant, the state of Ohio, appeals from the decision of the Warren County Court granting a motion to suppress filed by appellee, Donald E. Wilkinson.  For the reasons outlined below, we reverse the trial court's decision and remand this matter for further proceedings.

**Wilkinson's Arrest**

{¶ 2}   On the evening of February 4, 2018, Officer Joseph Smith with the Hamilton Township Police Department arrested Wilkinson on suspicion that he had operated a vehicle while under the influence of alcohol.  It is undisputed that the arrest occurred outside the home where Wilkinson then resided.  It is also undisputed that at the time of his arrest a maroon Honda belonging to Wilkinson was parked in the driveway.

**Motion to Suppress**

{¶ 3}   On February 13, 2018, Wilkinson filed a motion to suppress.  In support, Wilkinson alleged his arrest was not supported by probable cause, thereby violating his constitutional rights.  The trial court held a hearing on the motion on April 24, 2018.  The lone witness to testify at the suppression hearing was Officer Smith.  The following is a recitation of facts taken from Officer Smith's testimony.

**Officer Smith's Testimony**

{¶ 4}   At 6:28 p.m. on the evening in question, a dispatch was issued for officers to be on the lookout ("BOLO") for a maroon Honda near the intersection of Foster-Maineville Road and Sibcy Road.  The dispatch was issued after a concerned citizen called 9-1-1 to report what he believed to be an intoxicated driver driving a maroon Honda.  It is undisputed that the caller's name and phone number were provided to the 9-1-1 operator and thereafter provided to Officer Smith.

{¶ 5}   The concerned citizen called 9-1-1 after seeing the driver of the maroon Honda committing "some marked lane violations" and a "wide enough turn" to where "the vehicle nearly drove up on the curb."  The caller's observations of the maroon Honda occurred while the vehicle was turning onto Ravenwood Lane from Foster-Maineville Road. Although snowing intermittently that evening, the record indicates the roads, driveways, and sidewalks were not snow covered

{¶ 6} At 6:38 p.m., approximately 10-minutes after the BOLO was issued, Officer Smith was traveling on Willow Ridge Circuit when he noticed a "gentleman that was somewhat on his hands and knees, appeared to be in the position of trying to get up from the ground."  It is undisputed that the individual rising up was Wilkinson.  It is also undisputed that where Wilkinson was seen getting up from the ground was near the driveway leading to the home where Wilkinson then resided.  Parked in the driveway was a maroon Honda.

{¶ 7} Officer Smith testified the distance between Maineville-Foster Road and Sibcy Road (where the maroon Honda was last seen by the concerned citizen) and the home on Willow Ridge Circuit (where he observed Wilkinson getting up from the ground) was "[l]ess than a mile probably."

{¶ 8} Upon seeing Wilkinson getting up, Officer Smith turned his cruiser around and parked at the end of the driveway.  After parking, Officer Smith walked down the driveway towards Wilkinson.  Wilkinson was at that time standing near the garage door attempting to input the garage door access code.  Officer Smith explained his observations upon parking his cruiser and approaching Wilkinson as follows:

> [OFFICER SMITH]: So I went down and turned around on Willow Ridge and came back to the driveway.  Which at that point is when I started to walk up the driveway and I noticed a gentleman trying to enter a code into a garage door pad.
>
> [THE STATE]: Okay.  And what happened after that point?
>
> [OFFICER SMITH]: I observed the gentleman prior to making contact.  Sometimes that gives us clues as to what potentially is going on.  I was concerned there might be a medical situation occurring.  So I realized he struggled to enter that code to get into the garage door – I approached and made contact with that gentleman.

{¶ 9} As Officer Smith approached Wilkinson, Officer Smith observed "multiple sequences of presses, multiple attempts" for Wilkinson to enter the correct garage door

access code. Wilkinson, however, was not successful in his efforts to open the garage door.

{¶ 10} After approaching Wilkinson, Officer Smith identified himself by stating "hello, hey." Officer Smith then stated, "Hey, are you okay? Hey. Hello. That type of thing." Wilkinson did not immediately respond to Officer Smith's questions nor did Wilkinson look up toward Officer Smith to acknowledge his presence. Officer Smith then again asked Wilkinson if he was okay; "I asked if he was okay after seeing him get up from the concrete driveway just minutes earlier." Officer Smith's main concern at that time was to check Wilkinson's well-being since he had just seen Wilkinson getting up from the ground.

{¶ 11} Not receiving any response from Wilkinson, Officer Smith made "a couple of attempts at least" to where it was "noticeable" that Wilkinson "wasn't hearing what I was saying." But, as Officer Wilkinson testified, "[a]t some point it obviously worked." Wilkinson was at that time carrying a bag of groceries and had with him a "suitcase cart" or "rolling cart" by his side. Wilkinson also had "wet spots" on the knees of his pants.

{¶ 12} Upon finally receiving a response from Wilkinson, Officer Smith immediately detected a strong odor of an alcoholic beverage on his person, "not just when he spoke." Officer Smith also noticed Wilkinson had "very watery" eyes and "some degree" of "garbled" and slurred speech. Wilkinson's "responses were also delayed." This made it "[a] little bit more difficult to understand than a normal speech pattern." Officer Smith was at that time "almost touching distance, you know, less than three feet" from Wilkinson.

{¶ 13} Not wanting Wilkinson to merely set his groceries down on the ground, Officer Smith asked Wilkinson if anybody was at home to take his belongings inside. Wilkinson responded that there was. Officer Smith and Wilkinson then walked down the sidewalk to the front door. While walking to the door, Officer Smith noticed Wilkinson had "balance issues" and was unsteady on his feet. Explaining further, Officer Smith testified:

More focus it appears on each step. It wasn't a normal paced walk. Other than seeing the balance issues, swaying when he was walking, it was a – more of a[n] effort for him to walk forward as opposed to what you would expect.

Officer Smith also noticed that Wilkinson was "swaying" even when he was standing still.

{¶ 14} Once Wilkinson's belongings were safely inside, Officer Smith and Wilkinson walked back to the garage door access pad. Officer Smith then testified:

[THE STATE]: So what do you do at this point?

[OFFICER SMITH]: We go back to the front of the garage door. The garage door was still closed at that time. And I began to ask Mr. Wilkinson about, do you have any medical issues, anything going on? I see that you fell. Normal contact in the beginning, making sure that there wasn't a reason why we needed to dispatch a squad or anything like that.

[THE STATE]: Did he indicate that he had any medical issues?

[OFFICER SMITH]: I don't believe he did at the time. A lot of the questions in the beginning when I was asking – either the answers were delayed or some of the questions just weren't answered. I had to ask a lot of those questions multiple times. So as I went through the entirety of this investigation you'll see that that's a pattern. But when he didn't indicate that there were medical issues and the strong odor of alcohol and the other things we've discussed, at that point I believed that we were going to be looking into a possible OVI.

{¶ 15} Now believing Wilkinson may have been the person driving the maroon Honda subject to the BOLO, Officer Smith asked Wilkinson if he had consumed any alcoholic beverages earlier that evening. Wilkinson responded that he "had one beer a long time ago. He indicated the time frame was a while. * * * [A] long time ago. That's the best I can recall." Wilkinson made this statement despite him just being seen by Officer Smith getting up from the ground while at the same time exhibiting a strong order of an alcoholic beverage on his person, "balance issues," "very watery" eyes, and "some degree" of "garbled" and slurred speech.

{¶ 16} At 6:42 p.m., four minutes after Officer Smith arrived at the scene, Officer

Smith's partner, Officer Kaufholz, also arrived at the scene. Furthering their inquiry, Officers Smith and Kaufholz asked Wilkinson about where he worked, where he was coming from, and how far he had driven that evening. Wilkinson responded that he had come home from work, "that he was already home, [and] that he just wanted to go inside." During this questioning, Wilkinson "eventually admitted to driving home" and confirmed that the maroon Honda parked in the driveway belonged to him. Wilkinson also reiterated that "he had only had one beer, that he was already home, [and] that I didn't see him driving."

{¶ 17} Following this questioning, Officer Smith returned to his cruiser to verify Wilkinson's information and his identity. After confirming Wilkinson's identity, Officer Smith telephoned the concerned citizen who had called 9-1-1 to report the maroon Honda. During this conversation, the caller and Officer Smith "cover[ed] what he witnessed."[1] Officer Smith then went back to the house where Wilkinson and Officer Kaufholz were still standing.

{¶ 18} Upon Officer Smith's return, Wilkinson began "purposefully not answering questions when they clearly were heard." Shortly thereafter, and based on "the totality of everything going on," Officer Smith requested Wilkinson to submit to the standardized field sobriety tests. But, as Officer Smith testified, he "had to ask [Wilkinson to submit to the standard field sobriety tests] several times. He would not answer the question. Eventually he indicated he wasn't going to."

{¶ 19} Officer Smith then testified:

> Based upon everything we determined that we were going to place Mr. Wilkinson under arrest and at the time we went to handcuff Mr. Wilkinson [but] he tried to go through the garage, which the garage door was now opened without his influence, and tried to go into the garage door in the house.

---

1. The concerned citizen also provided a written statement to police. According to Officer Smith, the statement comported with the information provided to him during this call.

- 6 -

{¶ 20} Officer Smith thereafter testified regarding Wilkinson's conduct:

[OFFICER SMITH]: He pulled away and tried to go into the house?

[WILKINSON'S DEFENSE COUNSEL]: Like how?

[OFFICER SMITH]: Pulled his arms away from our actual grasp and tried to go along side the car and into the house.

[WILKINSON'S DEFENSE COUNSEL]: And how far did he walk?

[OFFICER SMITH]: Six, seven, eight feet. I don't know exactly.

{¶ 21} Continuing, when asked why he allowed Wilkinson to get several feet away instead of immediately apprehending Wilkinson, Officer Smith testified:

One hand would have already been on and he tried to pull away. A[nd] he pulled away, as you described with his elderly, I apologize, but described as elderly, with his medical situations that you've now described, it doesn't necessarily require that we immediate (sic) escalate force if we don't determine that it's necessary.[2] So he was able to get some feet away from the spot in which he was standing based upon the fact that two officers were on the scene and that we were able to grab his other arm at that time and place him in handcuffs.

{¶ 22} Despite Wilkinson's attempts to retreat into the house, Officer Smith was able to detain Wilkinson and secure him in handcuffs. Officer Smith made the decision to arrest Wilkinson after finding him to be "obviously impaired." This, as noted above, was based on Officer Smith having just seen Wilkinson getting up from the ground, as well as the strong odor of alcoholic beverage on Wilkinson's person, Wilkinson's "very watery" eyes, "some degree" of "garbled" and slurred speech, and Wilkinson's "balance issues" causing him to be unsteady on his feet both while walking and standing still.

{¶ 23} After placing Wilkinson under arrest, Officer Smith read Wilkinson his *Miranda*

_____

2. At the time of his arrest, Wilkinson was 58 years old and, according to his defense counsel, was then scheduled to have hip replacement surgery.

- 7 -

rights and placed Wilkinson in the back of his police cruiser. Upon being placed in the cruiser, Wilkinson refused to acknowledge whether he understood his *Miranda* rights or "cooperate at any point" thereafter. This includes Wilkinson's refusal to read and sign the BMV Form 2255, a form that explains and provides information to individuals regarding the impact of an administrative license suspension.

{¶ 24} Wilkinson was then transferred to the Warren County Jail. During this time, Wilkinson continued to argue with Officer Smith. Wilkinson also refused to provide Officer Smith with his telephone number "[s]aying that, because I didn't answer his questions, he wasn't going to answer mine." But, upon arriving at the jail, Wilkinson nevertheless told the jail intake officer that he had consumed two beers earlier that day.

{¶ 25} Concluding, when asked if he felt that he had sufficient information to provide him with probable cause to effectuate Wilkinson's arrest for operating a vehicle while under the influence of alcohol, Officer Smith testified "Yes." Officer Smith reached this decision despite him not ever personally witnessing Wilkinson operate any vehicle that evening. This includes the maroon Honda belonging to Wilkinson parked in the driveway.

**Trial Court's Decision**

{¶ 26} On August 2, 2018, the trial court issued a decision granting Wilkinson's motion to suppress. In so holding, the trial court initially stated:

> After reviewing the evidence presented and the testimony of Officer Smith, this Court finds the motion is well taken. There was a "BOLO" for a maroon Honda that was called in by a citizen concerned about a possible OVI. Officer Smith did not observe any driving, but stumbled upon the maroon Honda when he observed Defendant in a position that gave Officer Smith cause for concern.

{¶ 27} Continuing, the trial court stated:

> While there were some indications of possible impairment, there were not enough indicators that Defendant was driving, was driving erratically, or that Defendant's vehicle was the vehicle

that was called into dispatch. There was not enough testimony or evidence that Defendant should have been asked to submit to field sobriety tests, chemical analysis, or arrested for suspicion of OVI.

{¶ 28} Concluding, although granting Wilkinson's motion to suppress, the trial court commended Officer Smith for his actions that evening. As the trial court stated:

It should be noted that Officer Smith took appropriate action when observing Defendant in position that indicated to Officer Smith [that] Defendant could have been in distress. Officer Smith should be commended for his actions that day.

**Appeal**

{¶ 29} Upon the authority granted by R.C. 2945.67(A) and Crim.R. 12(K), the state appeals from the trial court's decision granting Wilkinson's motion to suppress. In support of its appeal, the state argues the trial court erred by finding Officer Smith lacked sufficient probable cause to arrest Wilkinson on suspicion of operating a vehicle while under the influence of alcohol. We agree.

**Standard of Review**

{¶ 30} Appellate review of a ruling on a motion to suppress presents a mixed question of law and fact. *State v. Gray*, 12th Dist. Butler No. CA2011-09-176, 2012-Ohio-4769, ¶ 15, citing *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. When considering a motion to suppress, the trial court, as the trier of fact, is in the best position to weigh the evidence to resolve factual questions and evaluate witness credibility. *State v. Vaughn*, 12th Dist. Fayette No. CA2014-05-012, 2015-Ohio-828, ¶ 8. Therefore, when reviewing the denial of a motion to suppress, this court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Durham*, 12th Dist. Warren No. CA2013-03-023, 2013-Ohio-4764, ¶14. "An appellate court, however, independently reviews the trial court's legal conclusions based on those facts and determines, without deference to the trial court's decision, whether as a matter of law, the

facts satisfy the appropriate legal standard." *State v. Cochran*, 12th Dist. Preble No. CA2006-10-023, 2007-Ohio-3353, ¶ 12.

### Probable Cause for Warrantless Arrest

{¶ 31} "For a warrantless arrest to be lawful, the arresting officer must have probable cause that the individual had committed an offense." *State v. Watson*, 12th Dist. Warren CA2014-08-110, 2015-Ohio-2321, ¶ 14. "Probable cause is generally defined as a reasonable ground of suspicion supported by facts and circumstances sufficiently strong in themselves to warrant a prudent person in believing an accused person has committed or was committing an offense." *State v. Christopher*, 12th Dist. Clermont No. CA2009-08-041, 2010-Ohio-1816, ¶ 16. "Probable cause to arrest for OVI exists when, at the moment of arrest, the arresting officer had sufficient information, derived from a reasonably trustworthy source of facts and circumstances, to cause a prudent person to believe the accused was driving under the influence of alcohol." *State v. Way*, 12th Dist. Butler No. CA2008-04-098, 2009-Ohio-96, ¶ 30. A court makes this determination based on the totality of the facts and circumstances surrounding the arrest. *State v. Aslinger*, 12th Dist. Preble No. CA2011-11-014, 2012-Ohio-5436, ¶ 13, citing *State v. Homan*, 89 Ohio St.3d 421, 427 (2000).

### Analysis

{¶ 32} After a thorough review of the record, we agree with the state and find there was ample evidence to support Officer Smith's decision to arrest Wilkinson on suspicion of operating a vehicle while under the influence of alcohol. The trial court's decision granting Wilkinson's motion to suppress must therefore be reversed.

{¶ 33} As noted above, after dispatch issued a BOLO for a maroon Honda that had last been seen near the intersection of Foster-Maineville Road and Sibcy Road, Officer Smith observed a gentleman getting up from the ground in front of a home located on Willow Ride Circuit. This gentleman, as noted above, was Wilkinson. Officer Smith's observations

of Wilkinson occurred approximately ten minutes after the BOLO was issued at a home that was approximately one mile away from where the maroon Honda was last seen turning onto Ravenwood Lane from Foster-Maineville Road. In the driveway of this home was a maroon Honda.

{¶ 34} Concerned for Wilkinson's well-being, Officer Smith turned his cruiser around and parked at the end of the driveway. Officer Smith then approached Wilkinson as he struggled to enter the garage door access code. Upon his approach, Officer Smith announced himself and thereafter attempted to get Wilkinson's attention. This was, as Officer Smith testified, to determine whether Wilkinson was then suffering from a medical emergency for which he needed immediate medical care.

{¶ 35} After several attempts, Officer Smith was finally able to get Wilkinson's attention. However, even prior to getting Wilkinson's attention, Officer Smith detected a strong odor of alcoholic beverage on Wilkinson's person, "not just when he spoke." Officer Smith also noticed Wilkinson had "very watery" eyes and "some degree" of "garbled" and slurred speech. Wilkinson's "responses were also delayed" and was "[a] little bit more difficult to understand than a normal speech pattern." At this time Officer Smith was "almost touching distance, you know, less than three feet" from Wilkinson.

{¶ 36} Despite just being seen by Officer Smith getting up from the ground, Wilkinson denied that he had any medical issues or that he was then suffering from a medical emergency for which he needed immediate medical care. After learning Wilkinson was not then suffering from some medical condition, and considering a maroon Honda matching the BOLO was then parked in the driveway just a short distance away, Officer Smith asked Wilkinson if he had consumed any alcoholic beverages earlier that evening. To this, Officer Smith testified that Wilkinson admitted he "had one beer a long time ago. He indicated the time frame was a while. * * * [A] long time ago. That's the best I can recall."

{¶ 37} Upon further inquiry, which included Officer Smith telephoning the concerned citizen who initially called 9-1-1 to report what he believed to be a possible intoxicated driver, Officer Smith placed Wilkinson under arrest. Officer Smith made the decision to arrest Wilkinson after finding him to be "obviously impaired." Officer Smith reached this decision after considering the totality of the circumstances. This includes, as noted above, the fact that he had just seen Wilkinson getting up from the ground next to a maroon Honda, as well as the strong odor of alcoholic beverage on Wilkinson's person, Wilkinson's "very watery" eyes, "some degree" of "garbled" and slurred speech, and Wilkinson's "balance issues" causing him to be unsteady on his feet both while walking and standing still.

{¶ 38} The trial court granted Wilkinson's motion to suppress upon finding that although there were some indications that Wilkinson was possibly impaired, "there were not enough indicators that Defendant was driving, was driving erratically, or that Defendant's vehicle was the vehicle that was called into dispatch." The trial court's decision, however, was not based on whether there was *probable cause* for Officer Smith to effectuate Wilkinson's arrest. Rather, the trial court's decision was based on whether there was sufficient evidence to prove Wilkinson's *guilt beyond a reasonable doubt*. "That the state may fail to prove an offense by proof beyond a reasonable doubt does not mean that the much lower standard of probable cause did not exist to support the offense in the first instance." *State v. Mansour*, 12th Dist. Warren No. CA2015-06-051, 2016-Ohio-755, ¶ 26.

{¶ 39} Contrary to the trial court's holding, the fact that there was no direct evidence to prove Wilkinson was the same person driving the maroon Honda observed by the concerned citizen who called 9-1-1 is immaterial. Applying the applicable probable cause standard, and when considering the totality of the circumstances, there was sufficient information available to Officer Smith at the time of Wilkinson's arrest to cause a prudent person to believe Wilkinson had just minutes prior been operating a vehicle while under the

influence of alcohol. Much of this evidence was circumstantial. But, even then, "circumstantial evidence and direct evidence inherently have the same probative value, and in some instances, certain facts can only be established by circumstantial evidence." *State v. Wright*, 12th Dist. Fayette No. CA2017-10-021, 2018-Ohio-1982, ¶ 32, citing *State v. Jenks*, 61 Ohio St.3d 259, 272 (1991).

{¶ 40} As noted above, Wilkinson was seen by Officer Smith just getting up from the ground nearby to a maroon Honda. Minutes prior and approximately one mile away, a maroon Honda was observed by a concerned citizen committing "some marked lane violations" and a "wide enough turn" to where "the vehicle nearly drove up on the curb." Upon his approach, Officer Smith noticed Wilkinson struggling to input the garage door access code. Wilkinson was carrying a bag of groceries and had with him a "suitcase cart" or "rolling cart" by his side. The logical inference being that Wilkinson, exhibiting multiple clues of impairment, had just arrived home via the maroon Honda parked in the driveway.

{¶ 41} Again, when viewed under the totality of the circumstances, we find this to be ample evidence to support Officer Smith's decision to arrest Wilkinson on suspicion of operating a vehicle while under the influence of alcohol. That is, stated differently, ample evidence to support a finding of probable cause to effectuate Wilkinson's arrest. Yet, although there was *probable cause* to effectuate Wilkinson's arrest, it is the trier of fact at trial, not the trial court in ruling on a motion to suppress, that must determine whether the evidence elicited at trial was sufficient to prove Wilkinson's *guilt beyond a reasonable doubt*.

{¶ 42} In so holding, we note that "[t]he totality of facts and circumstances can support a finding of probable cause to arrest for DUI even in the absence or exclusion of field sobriety tests." *State v. Crotty*, 12th Dist. Warren No. CA2004-05-051, 2005-Ohio-2923, ¶ 14; *see, e.g., State v. Minton*, 12th Dist. Warren No. CA2017-08-132, 2018-Ohio-2142, ¶ 14-15 (probable cause to arrest existed where officer detected odor of alcoholic

beverage coming from inside the vehicle, appellant admitted to consuming alcohol, refused to submit to field sobriety testing, and exhibited bloodshot and glassy eyes, sluggish and slurred speech, and was unsteady on his feet); *City of Wilmington v. Taylor*, 12th Dist. Clinton No. CA2009-11-018, 2010-Ohio-3255, ¶ 20 (probable cause to arrest existed where officer detected moderate to strong odor of alcoholic beverage coming from inside the vehicle and on person, appellant had bloodshot and glassy eyes, slow and pertinent speech, and refused to submit to field sobriety testing).

{¶ 43} That is certainly the case here when considering, once again, Officer Smith had just seen Wilkinson getting up from the ground next to a maroon Honda, the strong odor of alcoholic beverage on Wilkinson's person, Wilkinson's "very watery" eyes, "some degree" of "garbled" and slurred speech, and Wilkinson's "balance issues" causing him to be unsteady on his feet both while walking and standing still.

**Conclusion**

{¶ 44} The trial court erred by granting Wilkinson's motion to suppress. As discussed more fully above, when considering the totality of the circumstances, there was ample evidence to support Officer Smith's decision to arrest Wilkinson on suspicion of operating a vehicle while under the influence of alcohol. Therefore, because we find Officer Smith acted lawfully at all times relevant, including his decision to approach Wilkinson after just seeing him getting up from the ground in close proximity to the home where he then resided, the trial court's decision granting Wilkinson's motion to suppress was improper and must be reversed. Accordingly, finding merit to the state's single assignment of error, we hereby sustain the same and reverse and remand this matter to the trial court for further proceedings.

{¶ 45} Judgment reversed and remanded.

HENDRICKSON, P.J., and PIPER, J., concur.