[Cite as *State v. Dickerson*, 2022-Ohio-298.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

      Plaintiff-Appellee,          :

                                    No. 109434

v.                                      :

OSCAR DICKERSON,                        :

      Defendant-Appellant.         :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:**  AFFIRMED IN PART, REVERSED IN PART,
                  AND REMANDED
**RELEASED AND JOURNALIZED:**  February 3, 2022

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-14-585521-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Daniel T. Van, Assistant Prosecuting
Attorney, *for appellee.*

Russel S. Bensing, *for appellant.*

EMANUELLA D. GROVES, J.:

{¶ 1}  Defendant-appellant Oscar Dickerson ("Dickerson") appeals from the

trial court's decision to grant plaintiff-appellee the state of Ohio's ("the state")

motion to reinstate his conviction, following the court's denial of his motion to

dismiss for preindictment delay.[1]  For the reasons that follow, we affirm in part, reverse in part, and remand.

## Factual and Procedural History

{¶ 2}  This case is the latest in a series of appeals from Dickerson's 2014 convictions for rape and kidnapping that stemmed from a 1994 incident.  On May 15, 2014, Dickerson and his codefendant Michael Jenkins ("Jenkins") were each indicted on two counts of rape, one count of kidnapping, and two counts of complicity.

{¶ 3}  The facts in this case have been completely and comprehensively set out in *State v. Dickerson*, 2016-Ohio-807, 60 N.E.3d 699 ("*Dickerson I*") and *State v. Jenkins*, 2018-Ohio-483, 106 N.E.3d 216 (8th Dist.) ("*Jenkins II*").  We summarize below:[2]

> The following facts were elicited at trial * * *.  The victim, J.R., testified that on July 2, 1994 * * * she was 16 years old.  She had spent the day and evening with her boyfriend at his house, drinking and smoking marijuana. She left her boyfriend's house some time after midnight to walk home.  Her boyfriend walked with her approximately halfway home.  She proceeded to walk the remainder of the approximately 40-minute walk home alone.
>
> When she was approximately ten minutes from her house, three males in a car approached her and called out to her as the car drove past.  The car "circled back" a few times, and J.R. testified that she "waved them off." J.R. started to cut across an open area to avoid the car, but the car pulled over near a library. J.R. testified that the car was driven by an older white male.  Two younger black males were also in the car.

---

[1] This is a companion appeal to *State v. Jenkins*, 8th Dist. Cuyahoga No. 109421 ("*Jenkins V*").

[2] *Jenkins II* at ¶ 3-21

One of the younger men got out of the car and approached J.R., offering her a ride home. She initially declined, but the young man persisted. At approximately 1:30 a.m., J.R. ultimately got into the car and told the men where she lived. J.R. testified that she was "not thinking" when she got in the car; she also testified that she accepted the ride because she was scared. The car proceeded to drive past her street. J.R. testified that she again told the driver where she lived as they passed her street, but she was ignored.

The car eventually pulled into a hotel parking lot. The driver of the car, later identified as Jerry Polivka, got out of the car and proceeded to rent a hotel room. A receipt indicated that the room was rented at approximately 4:42 a.m. J.R. remained in the car with the other two men, the then-18-year-old defendant-appellant Michael Jenkins and his then-19-year-old codefendant Oscar Dickerson. J.R. testified that she did not know the men, but they identified themselves as "Mike" and "Oscar" or "O," respectively.

When Polivka returned to the car, he drove to a back entrance of the hotel, where Dickerson and Jenkins walked J.R. into a hotel room. Polivka drove off, leaving J.R., Dickerson, and Jenkins at the hotel.

J.R. testified that she tried to think of a way to get out of the situation. At one point, she asked to go outside to smoke a cigarette, hoping to escape, but one of the young men accompanied her. J.R. accepted crack cocaine from him to put on the end of her cigarette, which she testified that she smoked in an attempt to "numb" herself for what she believed "was going to happen." Dickerson and Jenkins proceeded to have vaginal intercourse with J.R. in the bathroom and bedroom of the hotel room.

After both men had intercourse with J.R., she took a shower in the hotel bathroom. When she returned to the living area of the hotel room, Jenkins and Dickerson were asleep. J.R. took that opportunity to escape from the hotel room and go home.

J.R. testified that when she got home, she tried to run upstairs to the bathroom, but her mother confronted her and demanded to know where she had been. J.R. then told her mother what had happened at the hotel room.

J.R.'s mother testified that she was on the porch when J.R. returned home that morning and that J.R., who usually avoided her, sat down on the porch and looked like she wanted to talk. According to J.R.'s

mother, J.R. then voluntarily told her what had happened. J.R.'s mother then called the police, who responded to the call at J.R.'s home. Subsequently, J.R. went to the hospital and was treated for sexual assault. The responding officers went to the hotel, where they found Dickerson and Jenkins asleep in the hotel room. Both men were arrested.

The police obtained the receipt for the hotel room from a hotel clerk. The receipt identified Jerry Polivka as the individual who rented the room. Polivka was named as a suspect in the initial report, but was never contacted by the police in connection with this case.

After J.R. left the hospital, she went with her mother to meet with a detective to discuss the incident. J.R. testified that the detective was "very rude" and shared her opinion of the incident, leaving J.R. feeling humiliated and prompting her to tell the detective to "forget it if she wasn't going to help." J.R.'s mother, however, testified that the detective was respectful.

Following this meeting, the detective noted in the case file that no further investigation would take place.

Several days later, J.R. was walking to her boyfriend's house when someone she recognized as "Mike" pulled up alongside her in a car. J.R. testified that Mike seemed angry and "forced" her to sign a note recanting her statements about the incident. J.R. signed the note and immediately reported this incident to the police. The police made an intimidation report but never followed up on the incident.

J.R. testified that shortly after the July 2 events, she found out that she was pregnant and did not follow up with the police because she wanted to "get on with her life."

On August 24, 2012, J.R.'s rape kit was submitted to BCI for DNA testing as part of the Sexual Assault Kit Testing Initiative. DNA analysis showed Dickerson's DNA on vaginal and rectal swabs and Jenkins's DNA on the victim's bathing suit bottoms. The detective assigned to the case discovered that Polivka was deceased.

On May 15, 2014, Dickerson and Jenkins were each indicted on one count of rape for vaginal intercourse, one count of rape for fellatio, two corresponding counts of complicity to commit rape, and one count of kidnaping. Both defendants pleaded not guilty to all charges.

On November 5, 2014, counsel for Dickerson filed a motion to dismiss based on preindictment delay. Jenkins's counsel did not file a similar motion at this or any other point in the proceedings.

The docket in Dickerson's case does not indicate a ruling on Dickerson's motion to dismiss. In his appeal to this court, Dickerson characterized the motion as having been denied as untimely, and this court adopted that characterization. *Dickerson II* at ¶ 2. A review of the transcript shows that the trial court declined to consider the motion because it was untimely.

A jury trial took place from November 12 to November 18, 2014. The jury found both defendants guilty of one count of rape for vaginal intercourse, one count of complicity for each other's rape conviction, and one count of kidnaping. The jury found both defendants not guilty of the rape and complicity charges as they related to fellatio.

{¶ 4} On December 29, 2014, the court sentenced Dickerson to five years in prison on each count, to be served concurrently. This sentence was imposed under Am.Sub.H.B. No. 86, the sentencing regime that became effective on September 30, 2011, and was in effect at the time of sentencing in 2014.

{¶ 5} The state appealed, arguing that the trial court erred by ordering a definite term of incarceration because Dickerson would have been subject to an indefinite sentence under the sentencing regime as it existed at the time of the 1994 offense. Dickerson cross-appealed, arguing that the trial court erred in denying his motion to dismiss for preindictment delay and that his trial counsel was ineffective for not timely filing the motion. This court vacated Dickerson's conviction, finding that his counsel was deficient for not timely filing the motion to dismiss and that there was a reasonable probability that it would have been granted had it been timely filed, given that Dickerson "had a strong, viable claim of actual prejudice." *Dickerson I* at ¶ 43. The state appealed this decision to the Ohio Supreme Court,

and the Supreme Court vacated *Dickerson I* and remanded the case "for application of *State v. Jones*, [148 Ohio St.3d 167,] 2016-Ohio-5105, [69 N.E.3d 688]." *State v. Dickerson*, 146 Ohio St.3d 1493, 2016-Ohio-5585, 57 N.E.3d 1172.

{¶ 6} On remand and after applying *Jones*, this court reached the same conclusion, finding that Dickerson's counsel was ineffective and stating, in relevant part:

> After consideration of this case, we find that Dickerson had a reasonable probability of success in demonstrating actual and substantial prejudice. The circumstances of this case are similar to the circumstances in [*State v.*] *Luck*, [15 Ohio St.3d 150, 427 N.E.2d 1097 (1984)] in that the defendants and the deceased [witness] were together here for, at least part of, the alleged crimes. Polivka was a key witness — he was with the victim for a number of hours during the course of alleged crimes and the victim herself was unable to account for that time. Thus, under the particular circumstances of this case, we find that Dickerson had a reasonable probability of success in demonstrating actual and substantial prejudice, the first prong of a claim of preindictment delay.
>
> Further, under the second part of the preindictment delay test, we find that Dickerson would have had a reasonable probability of success on his motion given the state's reason for the delay.

*State v. Dickerson*, 8th Dist. Cuyahoga No. 102461, 2017-Ohio-177, ¶ 59-60 ("*Dickerson II*").

{¶ 7} The court in *Dickerson II* reversed Dickerson's convictions. *Id.* at 64.[3]

---

[3] On March 24, 2016, codefendant Jenkins filed a delayed appeal arguing that his trial counsel was ineffective for failing to file a motion to dismiss for preindictment delay in the trial court. This court agreed and reversed Jenkins's conviction. *State v. Jenkins*, 8th Dist. Cuyahoga No. 105226, 2018-Ohio-483. The *Jenkins* Court relied on the court's opinion in *Dickerson II*, stating that it "[agreed] with our prior decision in *Dickerson II* that the unavailability of Jerry Polivka constitutes actual prejudice" and that there was no justifiable reason for the state's delay.

{¶ 8} The state filed a motion for reconsideration, asking this court to clarify the remedy. Specifically, the state asked this court to instruct the trial court to "conduct a hearing on the motion for pre-indictment delay, and if denied to re-enter the judgment of conviction." Dickerson filed a brief in opposition, arguing that *Dickerson II* had already determined that he suffered actual prejudice as a result of preindictment delay, and therefore, "there is nothing more for the trial court to do on remand than dismiss the case, in accordance with this court's decision." This court summarily denied the state's motion for reconsideration, and the case was remanded to the trial court.

{¶ 9} On remand, on October 24, 2017, Dickerson filed a motion to dismiss the indictment based on the law of the case, arguing that the mandate in *Dickerson II* rendered further proceedings unnecessary because this court reached a "legal conclusion that Dickerson had been prejudiced by the preindictment delay, and that the delay had been unjustifiable," and therefore, a dismissal was required pursuant to the law of the case.

{¶ 10} The state opposed the motion to dismiss, arguing instead that the trial court was obligated to hold a hearing on Dickerson's motion to dismiss for preindictment delay. On November 28, 2017, the trial court denied Dickerson's motion to dismiss based on the law of the case, distinguishing between this court's conclusion in *Dickerson II* that there was a "reasonable probability" that a timely motion to dismiss for preindictment delay would have been granted and a conclusion that it should have been granted.

{¶ 11} On December 20, 2017, Dickerson filed a motion to dismiss for preindictment delay. The state opposed the motion, and the court held hearings on the motion on February 22 and May 3, 2018. At the hearings, the court took evidence on the issue of preindictment delay in the form of trial transcripts and heard arguments from counsel.

{¶ 12} On June 4, 2018, the trial court denied Dickerson's motion, finding that Dickerson did not suffer prejudice due to the delay. The state then filed a motion to reinstate Dickerson's conviction. On July 6, 2018, the trial court denied this motion. The state sought leave to appeal the denial of its motion, and this court granted leave. Dickerson also appealed the trial court's denial of his motion to dismiss for preindictment delay. This court dismissed Dickerson's appeal, finding that the trial court's denial of his motion to dismiss for preindictment delay was not a final appealable order. *State v. Dickerson*, 8th Dist. Cuyahoga No. 107419, 2019-Ohio-2736 ("*Dickerson III*"). Likewise, this court dismissed the state's appeal, finding that the trial court's denial of the state's motion to reinstate Dickerson's convictions was not a final appealable order. *State v. Dickerson*, 8th Dist. Cuyahoga No. 107520, 2019-Ohio-2738 ("*Dickerson IV*"). The state appealed this court's decision in *Dickerson IV*, and the Ohio Supreme Court declined jurisdiction. *State v. Dickerson*, 157 Ohio St.3d 1467, 2019-Ohio-4419, 133 N.E.3d 539.

{¶ 13} On November 22, 2019, the state filed a motion to reconsider the denial of its motion to reinstate Dickerson's convictions. On November 25, 2019 the trial court held a hearing on this motion. On December 31, 2019, the trial court

granted the state's motion to reinstate Dickerson's convictions. Its judgment entry stated, in part:

> [U]pon correcting the pretrial error by a full presentation and consideration of the motions to dismiss, there were no proceedings consistent with the appellate decisions left to conduct. If the motions had been granted, the indictments against Jenkins and Dickerson would simply have been dismissed by a judgment entry without further proceedings. But the motions were denied and the error-free trial that ordinarily would have followed such a denial has already taken place. Therefore the only thing left is to reinstate the defendants' convictions without further proceedings because it is consistent with the decisions by the court of appeals and with the jury's decisions beyond a reasonable doubt about the guilt of both defendants.

{¶ 14} Dickerson now appeals and assigns the following two errors for review:

## Assignment of Error No. 1

The trial court erred in denying the Motion to Dismiss the Indictment for Preindictment Delay, in derogation of Defendant's right to Due Process of Law, as protected by the Fourteenth Amendment to the United States Constitution.

## Assignment of Error No. 2

The trial court erred in reinstating Defendant's conviction after that conviction was reversed and remanded for error in denying Defendant's Motion to Dismiss the Indictment for Pre-Indictment Delay.

## Law and Analysis

{¶ 15} In his first assignment of error, Dickerson argues that the trial court erred in denying the motion to dismiss the indictment for preindictment delay. In his second assignment of error, Dickerson argues that the trial court erred in reinstating his conviction after that conviction was reversed and remanded.

{¶ 16} In support of his first assignment of error, Dickerson argues that pursuant to the law-of-the-case doctrine, this court's prior decisions in Dickerson's case established that Dickerson had suffered actual prejudice from preindictment delay. Therefore, according to Dickerson, the trial court's denial of his motion to dismiss for preindictment delay violated the law-of-the-case doctrine and ran afoul of this court's mandate in *Dickerson II*.

{¶ 17} Dickerson's attempt to distinguish the court's opinion in *Dickerson II* with *State v. Carter*, 8th Dist. Cuyahoga No. 91019, 2008-Ohio-6955, must fail. In *Carter*, the court found that defense counsel was ineffective by failing to file a motion to suppress statements the defendant had made to the police. *Carter*, 8th Dist. Cuyahoga No. 91019, 2008-Ohio-6955, ¶ 23. The court further found that because a motion to suppress was not filed, and no evidentiary hearing was held in the trial court, the record did not reflect the circumstances under which the defendant made the incriminating statements. *Id.* at ¶ 25. With critical information absent from the record, the appellate court was unable to determine whether the statements should have been suppressed and remanded the case for further proceedings. *Id.* at ¶ 34. In *Dickerson II,* remand was necessary because our determination of ineffective assistance of counsel included an *analysis* of preindictment delay, but did not *decide* that issue.

{¶ 18} The state argues that the trial court was correct when it determined that this court's "finding a reasonable probability that the motion would have been granted is not the same as finding that it *should* have been granted." We agree. As

the court in *Dickerson III* succinctly stated, "[u]nquestionably, an ineffective assistance of counsel claim incorporates a different standard of review than that applied to appellate review of a denial of the motion to dismiss for preindictment delay." *Dickerson III* at ¶ 28.

{¶ 19} While we are mindful that the language in *Dickerson II*, and to an even greater degree the 2018 *Jenkins* opinion,[4] strongly signaled that the court believed that had Dickerson's counsel timely filed a motion to dismiss, it would have been granted, this does not change the issue that the court decided in *Dickerson II*. The discrete issue was whether Dickerson received ineffective assistance of counsel; the court was not making an ultimate determination as to whether Dickerson had suffered actual prejudice as a result of preindictment delay. The opinion in *Dickerson II*, therefore, was constrained by the legal standard of whether there was a "reasonable probability" that a timely motion to dismiss would have been granted.

{¶ 20} The court in *Dickerson II* addressed the theoretical question of a motion that had been neither timely filed nor fully litigated in the trial court. The extent of the court's deliberation on Dickerson's untimely November 2014 motion was whether there had been a legitimate reason for filing the motion mere days before trial. At that time, the trial court did not take evidence or hear arguments from either side as to the substantive basis for the motion. In light of this, and despite this court's statement that Dickerson had a "strong, viable claim of actual

---

[4] In *Jenkins II* this court opined in dicta that Jenkins had suffered actual prejudice due to the period of preindictment delay. *Jenkins II* at ¶ 39.

prejudice," the court in *Dickerson II* did not decide the underlying substantive legal question of whether Dickerson suffered actual prejudice. Regardless of any ambiguity in the mandate of *Dickerson II*, it is undisputed that the remand ultimately provided the parties an opportunity to present new evidence and arguments to satisfy their respective burdens related to the motion to dismiss. This was an opportunity the parties did not have at the appellate level, as the scope of this court's review was limited to whether Dickerson had received effective assistance of counsel. Therefore, the trial court neither violated the law-of-the-case doctrine nor ran afoul of this court's mandate in *Dickerson II* when it held a hearing on the motion to dismiss on remand. In light of this subtle but significant distinction, we disagree with Dickerson that the trial court's decision violated the law-of-the-case doctrine.

{¶ 21} We now address whether the trial court erred in denying Dickerson's motion to dismiss for preindictment delay. Because we find Dickerson met his burden in showing that he was prejudiced by the period of preindictment delay, we agree with Dickerson to the extent that the trial court erred in its failure to find actual prejudice by the preindictment delay. This court applies a de novo standard of review to a trial court's decision regarding legal issues in a motion to dismiss for preindictment delay. *State v. Jabbar*, 8th Dist. Cuyahoga No. 109642, 2021-Ohio-1191, ¶ 28, citing *State v. Knox*, 8th Dist. Cuyahoga Nos. 103662 and 103664, 2016-Ohio-5519, ¶ 12. Therefore, we will independently review the trial court's decision without any deference to its determination. *Id.*, quoting *State v. Clay*, 2d Dist.

Miami No. 2015-CA-17, 2016-Ohio-424, ¶ 5. We do, however, afford deference to the trial court's findings of fact. *Id.*, citing *State v. Walker*, 8th Dist. Cuyahoga No. 106414, 2018-Ohio-3669, ¶ 15. Therefore, we must accept the trial court's factual findings if they are supported by competent and credible evidence in the record. *Id.*, citing *State v. Burnside*, 100 Ohio St.3d 152, 2002-Ohio-5372, 797 N.E.2d 71, ¶ 8.

{¶ 22} Although the Sixth Amendment to the United States Constitution on its face provides no protection to those who have not been charged, "[w]hen unjustifiable preindictment delay causes actual prejudice to a defendant's right to a fair trial, despite the state's initiation of prosecution within the statutorily defined limitation period, the Due Process Clause affords the defendant additional protection." *State v. Jones*, 148 Ohio St.3d 167, 2016-Ohio-5105, 69 N.E.3d 688, ¶ 11, citing *United States v. Lovasco*, 431 U.S. 783, 789, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977). An unjustifiable delay between the commission of an offense and a defendant's indictment for committing that offense, which results in actual prejudice to the defendant, is a violation of the right to due process of law under Section 16, Article I of the Ohio Constitution and the Fifth and Fourteenth Amendments to the United States Constitution. *State v. Luck*, 15 Ohio St.3d 150, 472 N.E.2d 1097 (1984), paragraph two of the syllabus.

{¶ 23} Courts apply a two-part test to determine whether a delay in prosecution has violated the defendant's due process rights. The defendant bears the initial burden of showing that they were substantially and actually prejudiced by the delay. *State v. Whiting*, 84 Ohio St.3d 215, 217, 702 N.E.2d 1199 (1998). If the

defendant establishes actual prejudice, the burden shifts to the state to produce evidence of a justifiable reason for the delay. *Luck*, 15 Ohio St.3d at 154, 472 N.E.2d 1097, citing *United States v. Marion*, 404 U.S. 307, 324, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971).

{¶ 24} A determination of actual prejudice involves a "delicate judgment" and a case-by-case consideration of the particular circumstances involved. *State v. Jones*, 148 Ohio St.3d 167, 2016-Ohio-5105, 69 N.E.3d 688, ¶ 20, citing *State v. Walls*, 96 Ohio St.3d 437, 2002-Ohio-5059, 775 N.E.2d 829, ¶ 52, quoting *Marion*, 404 U.S. at 325, 92 S.Ct. 455, 30 L.Ed.2d 468. Further, "a court must 'consider the evidence as it exists when the indictment is filed and the prejudice the defendant will suffer at trial due to the delay.'" *Id.*

{¶ 25} The Ohio Supreme Court has repeatedly acknowledged the difficult burden placed on defendants particularly because proof of prejudice is "always speculative." *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, ¶ 100, citing *United States v. Montgomery*, 491 Fed.Appx. 683, 691 (6th Cir.2012), quoting *United States v. Rogers*, 118 F.3d 466, 475 (6th Cir.1997). While acknowledging the inherently speculative nature of actual prejudice arguments, the court has also clarified that a successful claim of actual prejudice cannot be purely speculative: "the mere possibility that 'memories will fade, witnesses will become inaccessible, or evidence will be lost is not sufficient to establish actual prejudice.'" *State v. Crymes*, 8th Dist. Cuyahoga No. 104705, 2017-Ohio-2655, ¶ 16, quoting *Jones* at ¶ 21. Nevertheless, a defendant is not required to establish precisely what

an unavailable witness would testify to, or that the testimony would be directly exculpatory. *Id.*, citing *Jones* at ¶ 27. Instead, actual prejudice exists when "missing evidence or unavailable testimony, identified by the defendant and relevant to the defense, would minimize or eliminate the impact of the state's evidence and bolster the defense." *Jones* at ¶ 28, citing *State v. Luck*, 15 Ohio St.3d 150, 472 N.E.2d 1097 (1984) at 157-158.

{¶ 26} In denying Dickerson's motion to dismiss for preindictment delay, the trial court held that there is little doubt that Polivka would have "relevant testimony" to offer. Despite this, though, the court found that it could not conclude that this testimony would minimize or eliminate the state's evidence or bolster the defense. The court supported this conclusion primarily with the following findings: 1) Polivka likely would have been indicted with Dickerson and Jenkins and thus unable to testify at trial; 2) nothing in the record supports the conclusion that Polivka would contradict J.R.'s version of events; 3) even if Polivka contradicted J.R.'s version of events, this is insufficient to establish actual prejudice because he would be unable to testify about what happened in the hotel room. After thorough review, we conclude that the evidence presented to the trial court contradicts this holding.

{¶ 27} We begin with the finding that Polivka likely would have been unable to testify as a result of his status as a codefendant. The conclusion that Polivka would have been unavailable as a witness is rejected. This conclusion is wholly unsupported by competent and credible evidence in the record, contradicts

*Dickerson II*, and imposes a new burden on defendants in preindictment cases. The court in *Dickerson II* resolved this argument when it was made by the state by reasoning that, although one of the officers assigned to the case had a name and address for Polivka, he made no attempt to contact him and did not consider him a suspect. *Dickerson II* at ¶ 52. Without any attempt by law enforcement to contact Polivka to speak with him, let alone indict him, there is no basis for concluding that he would have been unavailable as a witness by virtue of his status as a codefendant. Even if the court's conclusion were supported by competent and credible evidence, we are aware of no case in which a defendant is required to show not only that a deceased witness would provide relevant testimony that would minimize the impact of the state's case, but also that the witness would be able to overcome any alleged procedural barriers to testifying on the defendant's behalf. The burden for a defendant attempting to establish they suffered actual prejudice as a result of preindictment delay is already "nearly insurmountable." *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, ¶ 100. We decline to further heighten this burden here.

{¶ 28} Next, we will address the trial court's second and third findings together. With respect to the trial court's finding that nothing in the record supports the conclusion that Polivka could have provided a version of events that contradicted J.R.'s, we find this to be a misapplication of the standard articulated by the Ohio Supreme Court in *Luck* and *Jones*. In *Luck*, the Ohio Supreme Court found that the defendant was prejudiced by a 15-year preindictment delay for murder. The court

balanced the alleged sources of actual prejudice — the death of two key witnesses, the fading of memories and changing of appearances, and the loss of all of the recorded interviews with potential witnesses compiled shortly after the murder — against the other admissible evidence in the case and found that Luck had suffered actual prejudice. *Luck* at 157. Specifically, the court found that even though the state had circumstantial evidence linking Luck to the victim's death, "it cannot be said that the missing evidence or the dead witnesses would not have minimized or eliminated the impact of the state's circumstantial evidence." *Id.*

{¶ 29} As with the missing witness in the instant case, Luck did not show exactly what the missing witnesses would have testified to in support of her defense. Instead, Luck merely argued that one witness, a friend who was allegedly in the victim's apartment when she was killed, "was the one person who could have helped her in this matter but he is dead." *Id.* Likewise, the other witness was a doctor who allegedly treated Luck for a hand injury on or around the date of the murder. Luck did not explain how exactly the doctor's testimony would be relevant, let alone how it would have bolstered her defense. Instead, the Ohio Supreme Court found that Luck was "obviously prejudiced by not being able to seek verification of her story from [her friend] and thereby establish mitigating factors or a defense to the charge against her." *Id.* at 158. When the court reiterated the relevant standard in *Jones*, it looked to *Luck*, stating that Luck suffered actual prejudice "although there was no record establishing what the witness would have actually testified to." *Jones* at ¶ 25.

{¶ 30} The *Jones* standard makes clear that a defendant's arguments in support of an actual prejudice claim cannot be based on "mere speculation" because the theoretical possibility of lost evidence is insufficient to establish actual prejudice. *Id.* at ¶ 27. In cases in which the defendant's claims regarding lost evidence or unavailable witnesses are entirely unsupported by the record, this court has correctly found that those claims are too remote and speculative to establish actual prejudice. For example, in a recent case, this court found that a defendant's arguments that law enforcement could have investigated the car in which he allegedly raped the victim if he had been indicted at the time of the incident was insufficient to establish actual prejudice where, according to the defendant's own trial testimony, he did not have a car at the time of the incident. *State v. Danzy*, 8th Dist. Cuyahoga No. 109433, 2021-Ohio-1483, ¶ 25. The *Danzy* Court further held that the unavailability of two unknown individuals who allegedly found the victim and drove her to the hospital did not constitute actual prejudice because the individuals were never identified, let alone identified as witnesses, and therefore there was nothing in the record indicating what their unavailable testimony might have offered to the defense. *Id.*, citing *State v. Knox*, 8th Dist. Cuyahoga No. 107414, 2019-Ohio-1246, ¶ 37.

{¶ 31} This is not a case where Dickerson's actual prejudice is based on unfounded or entirely speculative claims. Instead, this case closely resembles *Luck*. Dickerson does not assert what exactly Polivka would have testified to at trial. Like *Luck*, though, Dickerson has clearly shown that he was prejudiced because he was

unable to seek verification of his story from someone who was with him on the night of the incident.  Furthermore, Luck's claim that one of the unavailable witnesses in her case was present for the murder was unsubstantiated.  Dickerson, however, has pointed to evidence in the record, including the victim's own testimony, showing that Polivka was present when the victim first encountered the defendants, drove them around, and ultimately rented the hotel room where the alleged rape took place.  Therefore, Dickerson's claim that he suffered actual prejudice is significantly stronger than Luck's successful claim because it is corroborated by documentary evidence and testimony in the record.

{¶ 32} Further, we are cognizant of the unique nature of rape cases in the context of preindictment delay.  This court has noted that, "unlike other crimes of violence, rape cases where consent is the only issue often turns on a credibility contest between the accused and the accuser."  *State v. Crymes*, 8th Dist. Cuyahoga No. 104705, 2017-Ohio-2655, ¶ 19.  Recognizing the particular relevance of witness credibility in this context, the *Crymes* Court found that missing phone records from hours before the alleged rape in that case constituted actual prejudice because, although the records obviously could not have provided direct proof of consent, they "would help appellee *verify* his account of the event, thereby bolstering the defense." *Id.* at ¶ 20, citing *Luck* at 157-158 and *Jones* at ¶ 28.

{¶ 33} Similarly, as in *Dickerson II*, we reach the same conclusion here. While Polivka's testimony almost certainly could not have provided an account of what took place in the hotel room, he likely would have testified about how exactly

J.R. came to be in the backseat of his car and what transpired during the hours between 1:30 a.m. when J.R. got in the car and 4:42 a.m. when Polivka rented a hotel room for J.R. and the defendants. Likewise, as the court in *Dickerson II* noted, Polivka was with the victim for a number of hours during the course of the alleged crimes and the victim herself was unable to account for that time. *Dickerson II* at ¶ 59. If Polivka were able to provide an account of the stretch of several hours that was not accounted for by J.R., this unquestionably would have minimized or eliminated the impact of the state's evidence by contradicting a significant aspect of its key witness's testimony. Finally, we note that Dickerson was also charged with kidnapping. Arguably, this kidnapping began from the moment in which J.R. entered the car and alleged that Polivka passed her street and continued driving away from her house. We reiterate that a defendant is not required to show exactly *how* lost evidence or unavailable testimony would support his case; nor is it required that the evidence would have been directly exculpatory. *State v. Crymes*, 8th Dist. Cuyahoga No. 104705, 2017-Ohio-2655, ¶ 16, quoting *Jones* at ¶ 27. Most importantly, the defendant must show that the evidence would minimize or eliminate the impact of the state's case or bolster the defense. *Jones* at ¶ 28. With that in mind, we find that it is entirely reasonable to conclude that Polivka, as the person driving the car in which J.R. was kidnapped, certainly could have provided testimony that this aspect of the incident was consensual, therefore bolstering Dickerson's defense. For these reasons, we find that Dickerson suffered actual prejudice as a result of the nearly 20-year preindictment delay.

**{¶ 34}** Succinctly, there is no doubt that the lengthy delay between the allegation and the indictment prejudiced Dickerson's defense. After considering the evidence as it existed when the indictment was filed, we find that Dickerson was prejudiced by the 20-year delay. Dickerson established that he was actually and substantially prejudiced by the death of Polivka whose testimony could have bolstered his defense as to all charges and undermined the state's case with respect to the rape by calling into question the issue of consent and the credibility of J.R. Having determined that Polivka's death created actual prejudice were Dickerson to stand trial today, we now turn our attention to the second prong of the analysis, the state's reason for the delay.

**{¶ 35}** In the instant case, the trial court elected not to rule on the second prong. Having found that Dickerson failed to prove prejudice, the trial court determined that it was unnecessary to address whether the state had a justifiable reason for the delay noting:

> Because prejudice hasn't been proved it is not necessary to make a finding of whether the delay from the crime until the indictment was justified. Nevertheless, because of the possibility that prejudice would be found the parties made a full record of the evidence and their respective arguments in support of their competing claims that delay was or was not justified.

**{¶ 36}** Even though the trial court noted there was a full record made of the parties' respective arguments, we are restricted in our review by two well-settled principles of appellate review:

> First, under Article IV, Section 3(B)(2) of the Ohio Constitution, appellate courts have jurisdiction to "review and affirm, modify, or

> reverse judgments or final orders of the courts of record inferior to the court of appeals within the district." * * * Second, an appellate court limits review to *issues actually decided by the trial court in its judgment.* See *Bowen v. Kil-Kare, Inc.,* 63 Ohio St.3d 84, 89, 585 N.E.2d 384 (1992) (declining to rule on issue not decided by trial court.)

(Emphasis added.) *Lycan v. Cleveland*, 146 Ohio St.3d 29, 2016-Ohio-422, 51 N.E.3d 593, ¶ 21.

{¶ 37} Having determined there was no actual prejudice, it was unnecessary for the trial court to address the second prong of the preindictment delay test. Although the record is complete before us, the decision on the second prong remains the province of the trial court. Therefore, we cannot address it.

{¶ 38} Accordingly, we sustain the first assignment of error in part and overrule it in part. The trial court erred in finding that Dickerson was not prejudiced by the period of preindictment delay. However, we affirm the trial court's decision not to address the reason for the delay because that was the appropriate decision under preindictment-delay analysis when a court does not find prejudice. As we *have* found prejudice, we sustain the first assignment of error and remand the case for the trial court to conduct the second prong of the review.

{¶ 39} In the second assignment of error, Dickerson argues that the trial court erred in reinstating his convictions. Based on our resolution of the first assignment of error, where we found actual prejudice and remanded to the trial court to complete the second prong of the test for prejudicial preindictment delay, we decline to address the second assigned error because it is not yet ripe for review.

{¶ 40} Judgment affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion.

{¶ 41} It is ordered that appellant and appellee share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EMANUELLA D. GROVES, JUDGE

MARY EILEEN KILBANE, J., CONCURS IN PART AND DISSENTS IN PART (WITH SEPARATE OPINION ATTACHED);
SEAN C. GALLAGHER, A.J., DISSENTS (WITH SEPARATE OPINION ATTACHED)


MARY EILEEN KILBANE, J., CONCURRING IN PART AND DISSENTING IN PART:

{¶ 42} I respectfully concur in part and dissent in part from the majority opinion. I agree with the majority's conclusion that Dickerson established that he suffered actual and substantial prejudice as a result of the nearly 20-year preindictment delay in this case. I disagree with the majority's conclusion that we are precluded from addressing the second prong of the preindictment delay test concerning whether the state had a justifiable reason for the delay.

{¶ 43} This is the fifth appeal in which this court has directly or indirectly addressed Dickerson's claim of preindictment delay. This court has consistently held that "Dickerson had a strong, viable claim of actual prejudice." *State v. Dickerson*, 2016-Ohio-807, 60 N.E.3d 699, ¶ 43 ("*Dickerson I*"). This holding was based primarily on the unavailability of a key witness, Jerry Polivka. *Id.* Similarly, on remand from the Ohio Supreme Court for application of *State v. Jones*, 148 Ohio St.3d 167, 2016-Ohio-5105, 69 N.E.3d 388, this court found that Dickerson "had a reasonable probability of success in demonstrating actual and substantial prejudice." *State v. Dickerson*, 8th Dist. Cuyahoga No. 102461, 2017-Ohio-177, ¶ 59-60 ("*Dickerson II*"). In the case of codefendant Jenkins, this court went further, "[agreeing]" with the decision in *Dickerson II* "that the unavailability of Jerry Polivka constitutes actual prejudice." *State v. Jenkins*, 2018-Ohio-483, 106 N.E.3d 216 (8th Dist.) ("*Jenkins II*"). Despite this court's finding of actual prejudice, the trial court on remand ignored the analysis from multiple panels of this court in addressing the issue of preindictment delay.

{¶ 44} The majority in *Dickerson II* placed particular emphasis on the fact that Polivka would have been able to testify as to what occurred during the almost three-hour period that the victim was completely unable to remember, noting that this was concerning to at least one juror at trial. *Dickerson II* at ¶ 50. The victim was the state's key witness at trial. She testified that at the time of the alleged rape, she had been "living recklessly," and that on the day of the incident, she had been drinking and smoking and was under the influence. *Id.* at ¶ 7. Although the timeline

presented by the state at trial was based largely on the victim's recollection of events, the victim was unable to recall what exactly happened between approximately 1:30 a.m., when she accepted a ride from Polivka, who was driving with Dickerson and Jenkins as passengers, and 4:42 a.m., when the hotel receipt showed that Polivka rented a hotel room for the victim and defendants. At a minimum, Polivka's testimony would have filled in a considerable gap in the sequence of events as they were presented at trial.

{¶ 45} *State v. Luck*, 15 Ohio St.3d 150, 157, 472 N.E.2d 1097 (1984), remains binding precedent on Ohio courts in preindictment delay cases. In the instant case, Dickerson presents a significantly stronger claim of actual prejudice than the appellant in *Luck*. In *Luck*, the Ohio Supreme Court found that the defendant was prejudiced by a 15-year preindictment delay for murder. The court balanced the alleged sources of actual prejudice — the death of two witnesses, the fading of memories and changing of appearances, and the loss of all of the recorded interviews with potential witnesses compiled shortly after the murder — against the other admissible evidence in the case and found that Luck had suffered actual prejudice. *State v. Luck*, 15 Ohio St.3d 150, 157, 472 N.E.2d 1097 (1984). Specifically, the court found that even though the state had circumstantial evidence linking Luck to the victim's death, "it cannot be said that the missing evidence or the dead witness would not have minimized or eliminated the impact of the state's circumstantial evidence." *Id.*

{¶ 46} Unlike Dickerson, Luck confessed to killing the victim in self-defense on the day of her arrest.[5]  Luck's version of events did not dispute the fact that she killed the victim; Luck essentially asserted that she killed the victim in self-defense. This is analogous to the instant case, in which Dickerson does not contest that he had a sexual encounter with the victim, but his theory of the case throughout trial and numerous appeals has been based on the notion that the encounter was entirely consensual.

{¶ 47} As with the missing witness in the instant case, Luck did not show exactly what the missing witnesses in her case would have testified to in support of her defense, nor was she required to have done so.  Instead, Luck merely argued that one witness, a friend who was allegedly in the victim's apartment when the victim was killed, "was the one person who could have helped her in this matter but he is dead."  *Id.*  The other witness was a doctor who allegedly treated Luck for a hand injury on or around the date of the murder.  Luck did not explain how exactly the doctor's testimony would be relevant, let alone how it would have bolstered her defense.  Reviewing Luck's claim, the Ohio Supreme Court found that Luck was "obviously prejudiced by not being able to seek verification of her story from [her friend] and thereby establish mitigating factors or a defense to the charge against her." *Id.* at 158.  When the court reiterated the relevant standard in *Jones*, it looked to *Luck*, stating that Luck suffered actual prejudice "although there was no record

---

[5] Although the Ohio Supreme Court ultimately determined that Luck's confession was obtained in violation of her Sixth Amendment rights, it considered her claim of actual prejudice amounting to preindictment delay in the context of the alleged confession.

establishing what the witness would have actually testified to." *State v. Jones*, 148 Ohio St.3d 167, 2016-Ohio-5105, 69 N.E.3d 688, ¶ 25.

{¶ 48} Unlike Luck, Dickerson is able to point to specific evidence in the record requiring a conclusion that Polivka's testimony would not only be relevant, it would minimize or eliminate the impact of the state's evidence and bolster Dickerson's defense. Where Luck's claim of actual prejudice was based on her unsupported assertions that the missing witnesses' testimony would have been helpful to her at trial, Dickerson's claim of actual prejudice is supported by evidence in the record, including the victim's own testimony. It is undisputed that Polivka was with the victim and defendants on the night of the incident. Evidence in the record, such as the victim's testimony and the hotel receipt, establishes that Polivka picked up the victim, drove the victim and defendants to a hotel, and rented a room for the victim and defendants.

{¶ 49} The *Jones* standard makes clear that a defendant's arguments in support of an actual prejudice claim cannot be based on "mere speculation" because the theoretical possibility of lost evidence is insufficient to establish actual prejudice. *Id.* at ¶ 27. In cases in which the defendant's claims regarding lost evidence or unavailable witnesses are entirely unsupported by the record, this court has correctly found that those claims are too remote and speculative to establish actual prejudice. *State v. Danzy,* 8th Dist. Cuyahoga No. 109433, 2021-Ohio-1483, ¶ 25. We reiterate, however, that this is not a case where Dickerson's actual prejudice is based on unfounded or entirely speculative claims. Dickerson does not assert, and

there is no way of knowing, what exactly Polivka would have testified to at trial. Like Luck, though, Dickerson has clearly shown that he was prejudiced because he was unable to seek verification of his recollection of events from someone who was with him on the night of the incident. Luck had nothing but her word to support her claim that one of the unavailable witnesses was present for the murder and therefore would have had relevant testimony. Dickerson, however, has pointed to evidence in the record, including the victim's own testimony, showing that Polivka was present when the victim first encountered the defendants, drove them around, and ultimately rented the hotel room where the alleged rape took place. Thus, while Polivka of course would not have been able to testify as to whether the sexual encounter was consensual, he would have been able to provide essential testimony as to his impression of the victim throughout the entire hours-long encounter, his relationship with the defendants, the nature of the interaction between the victim and the defendants, and his reason for renting a hotel room for the victim and defendants. Therefore, Dickerson's claim that he suffered actual prejudice is significantly stronger than Luck's successful claim because it is corroborated by documentary evidence and testimony in the record.

{¶ 50} In the instant case, Dickerson has repeatedly emphasized that not only was Polivka present for at least part of the incident in question, Polivka could likely have presented an account of the several hours of which the victim has no memory. Polivka also could have testified as to how and why the victim got into his car in the first place, as well as why he drove the victim and defendants to a hotel

and rented a room for them. In providing such an account, Polivka's testimony would have "minimized or eliminated the impact of the state's evidence" by contradicting significant aspects of the state's key witness's testimony and therefore undermining the victim's version of events. Polivka's testimony likewise would have "bolstered the defense" by verifying Dickerson's account of events — that the sexual encounter was consensual. With respect to consent, an essential element of the rape offense to be established beyond a reasonable doubt, the state's case rested entirely on the victim's own testimony. Any evidence that could have undermined the victim's credibility at trial would have had an impact on the outcome of this case. It is not for this court to determine whether such missing or unavailable evidence would have resulted in a not guilty verdict at trial. We are instead tasked with determining whether the evidence would "minimize or eliminate the impact of the state's evidence and bolster the defense." *State v. Jones*, 148 Ohio St.3d 167, 2016-Ohio-5105, 69 N.E.3d 688, ¶ 28. Applying this standard to the facts of this case, I believe it is clear that Dickerson has established actual prejudice. For these reasons, I agree with the majority's conclusion that Dickerson satisfied the first prong of preindictment delay by establishing that he suffered actual prejudice.

{¶ 51} I disagree, however, with the majority opinion's conclusion that we are precluded from determining whether the state has established a justifiable reason for the delay, and its subsequent conclusion that a remand is required for the trial court to conduct an additional review of this issue.

{¶ 52} In this case, we are reviewing the trial court's decision on a motion to dismiss for preindictment delay. This court applies a de novo standard of review to a trial court's decision regarding legal issues in a motion to dismiss for preindictment delay. *State v. Jabbar*, 8th Dist. Cuyahoga No. 109642, 2021-Ohio-1191, ¶ 19, citing *State v. Knox*, 8th Dist. Cuyahoga Nos. 103662 and 103664, 2016-Ohio-5519, ¶ 12, citing *State v. Gaines*, 193 Ohio App.3d 260, 2011-Ohio-1475, 951 N.E.2d 814 (12th Dist.). "'De novo review requires an independent review of the trial court's decision without any deference to the trial court's determination.'" *Id.*, quoting *State v. Clay*, 2d Dist. Miami No. 2015-CA-17, 2016-Ohio-424, ¶ 5. Here, as the majority notes, the trial court incorrectly determined that Dickerson had not suffered actual prejudice. Based on this incorrect conclusion, the trial court's analysis did not include a determination as to whether the state's delay was justifiable. This court's review, however, necessarily encompasses both prongs of the preindictment-delay analysis. In deciding the motion to dismiss, the trial court heard evidence and arguments as to both prongs of preindictment delay. Our review of the trial court's decision, therefore, can and should address both prongs of preindictment-delay. For these reasons, I do not believe that it is necessary to remand the case for the trial court to address the second prong.

{¶ 53} Because I believe that our review in this case encompasses both prongs of the preindictment-delay analysis, I would find that with respect to the second prong, the state was unable to explain, let alone justify the delay in this case. The state asserts that the reasons for the nearly 20-year delay were "investigative."

Nevertheless, the state does not dispute that between 1994, when the men in this case were identified and arrested in the hotel room in which the alleged rape took place, and 2012, when the victim's rape kit was tested for DNA, no investigation took place. Likewise, it is undisputed that no investigation took place despite authorities having collected physical evidence, identifying and arresting the men, and identifying a critical witness within hours of the incident. This was not a cold case, in which an unknown perpetrator committed a crime and the state had no investigative leads or physical evidence connecting the crime to a suspect. The state had ample physical evidence and had both men in custody for several days immediately following the incident and then chose to release them and not pursue the case, doing nothing for nearly 20 years.

{¶ 54} Additionally, I am not persuaded by the state's assertion that the Cleveland Police Department "did not do DNA testing" in 1994. There is a significant difference between arguing that DNA testing did not exist or was unavailable and arguing that it was simply not done. Further, unlike cases in which the suspect's identity is unknown, it is unclear exactly why the DNA testing done in this case was as critical as the state seems to imply, given that the young men were found sound asleep in the hotel room, arrested, and kept in police custody for days before they were released and the investigation ceased. Even if the DNA testing was critical, however, this only supports a conclusion that the delay in this case was the result of negligence or error in judgment. Rather than testing the victim's rape kit

in 1994 to obtain this critical evidence, the state elected to close the investigation in the case entirely.

{¶ 55} Finally, to the extent that the state argues that the delay was, at least in part, a result of J.R.'s unwillingness to cooperate, a review of the record easily contradicts this argument. I acknowledge that J.R. did not choose to pursue the matter. If the reason for closing the investigation in 1994 was because the victim expressed a desire not to pursue the case, however, the state seems to have entirely disregarded this desire in 2012 when it decided to reopen the investigation without any input from the victim, let alone any indication that she had a change of heart as to whether or not to pursue the matter 18 years later. For these reasons, I would find that the state has not satisfied its burden of showing that the preindictment delay in this case was justifiable. Additionally, I would note that Dickerson, the state of Ohio, and the alleged victim in this case are all entitled to some measure of finality, and this will not be achieved by ordering yet another remand.

{¶ 56} Therefore, I would find that the trial court erred in denying Dickerson's motion to dismiss for preindictment delay and in reinstating his conviction. I would accordingly reverse the judgment of the trial court and vacate Dickerson's convictions. For these reasons, I respectfully concur in part and dissent in part.

SEAN C. GALLAGHER, A.J., DISSENTING:

{¶ 57} I respectfully dissent from the majority's conclusion that Jenkins and Dickerson were prejudiced by the preindictment death of Polivka. I understand the

majority's decision, but I come to a different conclusion as I did in my separate concurring opinion in *State v. Jenkins*, 2018-Ohio-483, 106 N.E.3d 216 (8th Dist.) ("*Jenkins II*"), which referenced the dissent in *State v. Dickerson*, 8th Dist. Cuyahoga No. 102461, 2017-Ohio-177 ("*Dickerson II*"), asserting that no prejudice was shown in these cases. Although, in dicta, I disagreed with the *Dickerson II* majority's view that expressed prejudice was in play, I felt bound by the *Dickerson II* opinion on the question of ineffective assistance of counsel. Thus, I concurred with the outcome in *Jenkins II*.

{¶ 58} In my view, these cases underscore an argument that the standard for determining prejudice outlined in *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, ¶ 100, and *State v. Luck*, 15 Ohio St.3d 150, 157-158, 472 N.E.2d 1097 (1984), are at times unworkable and invite inconsistent outcomes. This view is particularly prevalent in cases where the identity of the offender was known at the time of the alleged crime and no prosecution was initiated. Those circumstances seem to cause the factual analysis on prejudice to take on a different and murky context.

{¶ 59} In the present case, Polivka was not present during the commission of the rapes committed by the then 21- and 22-year-old men against the 16-year-old victim. And even if Polivka possessed exculpatory evidence, a speculative fact yet to be established, Polivka's death precluded his being named as a codefendant for his conspiratorial conduct underlying the kidnapping convictions. In the appropriate parlance, Polivka was not available to testify before the preindictment delay so that

his death was not the cause of his unavailability at trial. It is well settled that the defendant must not only show the exculpatory nature of the missing evidence, but must also demonstrate that the witness would have been available to testify *but for the preindictment delay. See, e.g., United States v. Bouthot*, 685 F.Supp. 286, 298 (D.Mass.1988) (defendant failed to establish that the codefendant would have testified at trial, and therefore, failed to show prejudice from the codefendant's unavailability); *United States v. Stierwalt*, 16 F.3d 282, 285 (8th Cir.1994) (noting in overruling the claim of preindictment delay that the defendant failed to prove that the codefendant would have testified at the defendant's trial).

{¶ 60} There are only three factual scenarios here: (1) Polivka would have been indicted as a codefendant for his aiding Jenkins and Dickerson in the kidnapping of the victim, and therefore Polivka was not "available" to testify just as neither Jenkins nor Dickerson was available to testify at the other's trial through the assertion of their Fifth Amendment rights; (2) Polivka could provide exculpatory evidence on the kidnapping charge in the attempt to avoid prosecution for his involvement, the same as Jenkins and Dickerson could provide for each other, but Polivka cannot testify to any events during the rapes; or (3) Polivka had incriminating information to be offered in exchange for a plea in which case his unavailability benefited Jenkins and Dickerson. Importantly, none of those scenarios entitle Jenkins or Dickerson to a dismissal for preindictment delay.

{¶ 61} The majority maintains that Polivka's status as a codefendant should not preclude a finding of prejudice because

we are aware of no case in which a defendant is required to show not only that a deceased witness would provide relevant testimony that would minimize the impact of the state's case, but also that the witness would be able to overcome any alleged procedural barriers to testifying on the defendant's behalf.

*State v. Dickerson*, 8th Dist. Cuyahoga No. 109434, ¶ 25; *but see Bouthot* at 298; *Stierwalt* at 285; *United States v. Hofstetter*, E.D.Tenn. No. 3:15-CR-27-TAV-CCS, 2018 U.S. Dist. LEXIS 59058, at 11 (Jan. 3, 2018) (the codefendant's unavailability was not prejudicial since the defendant could call the remaining codefendants to confirm his story); *State v. Danzy*, 8th Dist. Cuyahoga No. 109433, 2021-Ohio-1483, ¶ 25 (evidence was not available immediately after the crime and, therefore, could not constitute prejudice under the preindictment-delay analysis). Thus, I cannot agree with the majority that Dickerson demonstrated prejudice because he was "unable to seek verification of his story from someone who was with him on the night of the incident."

{¶ 62} Under the majority's proposition, that a codefendant's reluctance to testify is not considered, Polivka's unavailability is immaterial. Jenkins and Dickerson could provide the missing testimony since both were undisputedly present during the entire criminal event — more so than Polivka, who was not present during the actual commission of the crime for which Dickerson and Jenkins were convicted. *See, e.g.*, *Hofstetter* (the codefendant's unavailability was not prejudicial since the defendant could rely on the remaining codefendants to confirm his story). According to the majority's rationale, Dickerson and Jenkins have

someone who was present to seek verification of their stories despite Polivka's death. *Id.*

{¶ 63} Since the majority's analysis depends on the fact that the state may not rely on the witness's status as a codefendant to establish the unavailability of the testimony before the delay, then fairness and every other notion of due process dictate that Jenkins and Dickerson cannot hide behind their status as codefendants to provide Polivka's missing testimony for each other. The death of a witness constitutes prejudice only "'if the defendant can identify exculpatory evidence that was lost *and show that the exculpatory evidence could not be obtained by other means.*'" *State v. Jones*, 148 Ohio St.3d 167, 2016-Ohio-5105, 69 N.E.3d 688, ¶ 26, quoting *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, ¶ 103; *Hofstetter*. Jenkins and Dickerson have not met their burden to demonstrate that Polivka's testimony would have aided their defenses, even if we ignore the fact that Jenkins and Dickerson could provide each other the missing evidence. *Dickerson II* at ¶ 73 (Stewart, J., dissenting).

{¶ 64} There is no additional burden here. All defendants claiming preindictment delay must demonstrate that the testimony or evidence would have been available at an earlier trial and are unavailable solely based on the preindictment delay. *Danzy*, 8th Dist. Cuyahoga No. 109433, 2021-Ohio-1483, at ¶ 25. This necessarily means that if a codefendant is deceased or unavailable through the passage of time, the defendant asserting preindictment delay must demonstrate that a codefendant would have testified at the other's trial or that no

other codefendant could offer the same evidence. *Bouthot*; *Hofstetter*; *Stierwalt.* Jenkins and Dickerson's claims both fail here because each could have provided the other the same evidence Polivka could have offered and his credibility was no better given his involvement in the kidnapping.

{¶ 65} Although I disagree that a remand is necessary in this case, the lead opinion's remand to permit the trial court to review the second prong of the prejudice analysis is the correct course of action. Nevertheless, I dissent from the majority's decision to reverse. I would affirm the trial court in every respect.